Frederick H. FUHRMAN, Appellant,

v.

Jean Smith FUHRMAN, Appellee.

No. 5208.

Court of Civil Appeals of Texas.

El Paso.

April 24, 1957.

Rehearing Denied May 29, 1957.

previously on a severance of the divorce matter from the property division. The final decree of the trial court, which included findings of fact and conclusions of law, determined what was separate property of the appellant and what was separate property of the appellee, and what was community property, and then divided the property between the parties by setting aside to appellant all of the property found to be his separate property, and by setting aside to appellee all property found to be her separate property, and by dividing the community property equally between the two. The appellant, in his appeal, does not complain of the formula used by the court for its division of the properties, but does complain that the court finds certain of his separate property to be community, and thereby awards half thereof to appellee as community property. The questions involved in this appeal and property particularly affected are divided into four general categories, to wit:

(1) 60,000 shares of stock in Fuhrman Petroleum Corporation, claimed to have been acquired by appellant under a written contract executed on June 6, 1929, amended on February 19, 1942, and December 12, 1949, and ratified on February 16, 1950.

(2) The Max Fuhrman stock, being 86,000.3 shares of stock in Fuhrman Petroleum Corporation claimed to have been acquired by appellant from the estate of his brother, Max Fuhrman, who died testate on September 14, 1938.

(3) Fuhrman Petroleum Company stock, being 6,613.9 shares of stock in Fuhrman Petroleum Corporation owned by Fuhrman Petroleum Company, a Delaware corporation, and distributed to appellant as the result of the liquidation of the Delaware corporation.

(4) 6,000 shares of stock in Fuhrman Petroleum Corporation claimed to have been given to appellant by Max Fuhrman on or about September 10, 1937.

Stubbeman, McRae & Sealy, W. B. Browder, Jr., Midland, Everett L. Looney, R. Dean, Moorhead, Looney, Clark & Moorhead, Austin, for appellant.

Hilda Blair Ray, Perkins, Bezoni & Casebier, Midland, for appellee.

HAMILTON, Chief Justice.

This is an appeal from a judgment dividing property between appellant, Frederick H. Fuhrman, and appellee, Jean Smith Fuhrman, upon their divorce. No appeal was taken from the divorce decree itself, the divorce decree having been granted

The trial court, in its judgment, held that all of the above-mentioned stocks were acquired during the marriage of the appellant and appellee, and belonged to the community estate of the two. Appellant and appellee were married February 3, 1934. In January, 1927, appellant and his brother, Max Fuhrman, and an associate, founded Fuhrman Petroleum Corporation, a Texas corporation. At all times material to this suit, appellant was president and general manager of said corporation, and was one of its principal stockholders. The initial capital stock of the Fuhrman Petroleum Corporation consisted of 140,000 shares, each with a par value of $1, but in the same year of its founding, the stock was increased to 250,000 shares with a par value of $1 each. On June 7, 1929, the capital stock was increased to 500,000 shares, with a par value of $1 each, and the corporation disposed of the additional 250,000 shares by declaring a 100% stock dividend. As of the time the stock dividend was declared, the appellant, Frederick H. Fuhrman, owned 56,343 shares. On June 6, 1929, the day before the stock dividend was declared, the owners of all of the stock (except for 1,000 shares owned by the Estate of Tom King, deceased) entered into an agreement whereby they waived payment of dividends upon the stock dividend to be declared, until a 100% cash dividend had been paid upon the former 250,000 shares. In addition, they agreed to donate, and subsequently did donate, 70,000 shares of the stock dividend to the corporation, 20,000 shares of which were to be sold or donated to the corporation employees, and appellant and others were given option to purchase the other 50,000 shares. These 70,000 shares are not involved in this lawsuit. It was further agreed that the remaining 180,000 shares were to be placed in escrow for appellant, his brother, Max Fuhrman, John I. Moore, and Barron Kidd. The purpose of the escrow agreement was "as an inducement to the beneficiaries, respectively, to give such care, effort and consideration to the affairs of the corpora-

tion to the end that the stock may rapidly increase in value." It was specified that if any beneficiary should cease to be in the service of the corporation, or should fail to serve it properly, his share of such stock should be delivered to the corporation and become free treasury stock. It was further provided that if any beneficiary died before the end of the escrow arrangement, his death should be deemed a partial failure to serve the corporation, and one-half of the shares held for him should belong to his estate, but the other one-half should be delivered to the corporation and become treasury stock. Finally it was directed that the escrow agent should deliver the stock to the beneficiaries whenever a 100% cash dividend had been paid upon the former 250,000 shares. Of the 180,000 shares of stock to be placed in escrow, 60,000 shares was to be held for the benefit of the appellant, and that is the stock mentioned in the above paragraph numbered (1), and which the court found to be community property, and which appellant contends should have been found to have been his separate property. The records of the corporation were introduced in evidence to show exactly what happened to that stock, and there is no dispute as to what happened. The difference between the parties is as to what the legal effect of certain happenings had on the status of the stock, as to whether it was separate property of the appellant, or community property of the marriage.

On June 24, 1929, an escrow agreement, as provided for in the June 6, 1929 agreement, was entered into with Republic National Bank of Dallas, the appellant, his brother Max, and the two other beneficiaries being parties thereto. On that same day the stockholders and directors met and ratified the escrow agreement. Pursuant to all these proceedings, on August 15, 1929, Certificate No. 76 for 180,000 shares of the corporation stock was issued to Republic National Bank and Trust Company, trustee. Of the 180,000 shares, 60,000 were held for appellant, and 10,000 for appellant's

brother, Max Fuhrman, and the other 110,-000 shares were held for the other two beneficiaries under the June 6, 1929 agreement. Soon after the aforementioned events, the latter two beneficiaries, John I. Moore and Barron Kidd, left the employment of the corporation and, pursuant to the terms of the agreement, the stock that had been held for them as turned back to the corporation as free treasury stock. Consequently, on May 26, 1930, certificate No. 76 was cancelled and, in lieu thereof, Certificate No. 129 for 70,000 shares was issued to said trustee. The stub for this certificate recites that it is part of the escrow stock, and that it came from original certificate No. 76. Appellant's brother, Max Fuhrman, died September 14, 1938. Of the 10,000 shares being held in escrow for Max Fuhrman, 5,000 shares were turned over to the Fuhrman Petroleum Corporation as treasury stock. Of the 5,000 shares that were due the Max Fuhrman estate, 500 had previously been assigned. Consequently, on September 29, 1941, certificate No. 484, in the amount of 4,500 shares, was issued to F. H. Fuhrman. This left Fred Fuhrman as the sole remaining beneficiary under the stockholders' agreement, and the remaining 60,000 shares of stock held by said Bank for the benefit of Fred Fuhrman under said agreement was evidenced by Certificate No. 337.

The next event that occurred in connection with the escrow stock was at a meeting of the stockholders of the corporation on February 19, 1942, wherein the stockholders passed a resolution to authorize the amendment of the escrow agreement to provide that said escrow stock should be delivered to the beneficiary, pro rata, each year that a dividend was paid on the former 250,000 shares, rather than all at once after 100% dividends had been paid on such shares. Appellant agreed to said amendment by executing the written amendatory contract.

In December, 1946, the Republic National Bank terminated its connection with the escrow agreement by turning over to the Fuhrman Petroleum Corporation certificate No. 337 for 60,000 shares that it had been holding for appellant's benefit. In the year 1946, prior to the time that the Republic National Bank surrendered said certificate to the corporation, the corporation had paid a cash dividend of ten per cent on the former 250,000 shares, and, on December 15, 1946, the date that certificate No. 337, which the bank had returned, was canceled, two new certificates were issued, No. 530 for 6,000 shares, and certificate No. 531 for 54,000 shares, which was issued in lieu of certificate No. 337. Certificate No. 530 for 6,000 shares was issued to appellant and, on the back of said certificate it was noted "By authority of minutes of stockholders' meeting February 19, 1942. Issued from treasury stock or bonus (1/10 of 60,000 shares) by authority of minutes of stockholders' meeting February 19, 1942." Certificate No. 531 for 54,000 shares as issued to Fuhrman Petroleum Corporation, with the statement thereon "Reserved to comply with contingent contract with F. H. Fuhrman." On the stub for that certificate it is stated that the stock came out of that represented by canceled certificate No. 337, and that it was "issued to Fuhrman Petroleum Corporation, reserved to comply with contingent contract with F. H. Fuhrman."

In the years 1947, 1948, 1949 and 1950, the balance of said escrow stock was issued and delivered to appellant in certificates numbered 542, for 6,000 shares; 569 for 6,000 shares; 571 for 6,000 shares; 539 for 6,000 shares, and 591 for 18,000 shares. The issuance of each of said certificates was definitely tied into the escrow stock held by the Fuhrman Petroleum Corporation for the benefit of appellant, F. H. Fuhrman, which stock originated as the result of the June 6, 1929 agreement. Although said stock was referred to at various times, in identifying it, as "treasury stock", "bonus stock", and "escrow stock", it is clear that the 60,000 shares of stock that Fred H. Fuhrman received, as set out

above, was from the same stock originally placed in escrow with Republic National Bank June 24, 1929.

The court's Finding of Fact No. 11 includes the various contracts, resolutions, agreements, and stock transfers as set out above, and in his Conclusions of Law No. 7, the court found as follows:

"By reason of Finding of Fact 11, the Court concludes, as a matter of law, that the June 24, 1929 contract was rescinded and abandoned on December 15, 1946 by the acts of the parties then in interest."

The court further states that, by reason of such Finding of Fact, and Conclusion of Law, that the 60,000 shares of stock received by F. H. Fuhrman from the escrow stock was community property of the marriage.

▇▇▇ We cannot agree with the court's Conclusion of Law in this matter. We do not think that the surrender by the Republic National Bank of the escrow stock to the corporation on December 15, 1946 had the effect of canceling the June 6th agreement, which provided that the stock in question was to be placed in escrow. From the action of the parties, all that happened on December 15th was that the Fuhrman Petroleum Corporation was by common consent substituted as Trustee in place of the Republic National Bank. Every action of the corporation, the beneficiary, stockholders, and directors, from that very day until the stock was delivered to F. H. Fuhrman, was bent toward the carrying out of the June 6, 1929 agreement. It is true that the agreement was amended in 1942, and again in 1950, and that F. H. Fuhrman received his stock prior to the time that 100% dividend was declared on the former 250,000 shares of stock. However, such changes and amendments were always made with the full consent of the interested parties, and certainly there is no evidence in the record that even indicated that there was an abandonment or a rescission of the

basic agreement of June 6, 1929, providing for the establishment of this escrow stock out of the dividend stock of 250,000 shares declared on June 7, 1929. Instead of receiving 56,343 shares of the dividend stock, as appellant was entitled to, he chose to enter into an agreement whereby he put his stock into escrow with that of the others, and chose to take out 60,000 shares upon certain conditions at a later time. That contractual right arose on June 6, 1929 and remained with appellant as his separate property, just the same as if he had received delivery of the stock prior to his marriage. In determining whether property is separate or community, the important thing to ascertain is the date of acquisition of right, rather than the date of acquiring possession: Welder v. Lambert, 91 Tex. 510, 44 S.W. 281; Law of Marital Rights in Texas, by Judge Speer, pp. 491, 524; MacRae v. MacRae, Tex.Civ. App., 144 S.W.2d 320 (wr. ref.).

▇▇▇ We likewise disagree with the trial court's holding in concluding, as a matter of law, that the 86,000.3 shares of stock in Fuhrman Petroleum Corporation, coming from the Max Fuhrman estate, was community property of the marriage. On May 20, 1938, Max Fuhrman executed his will, where he devised to Fred Fuhrman, first, all of the stock in Fuhrman Petroleum Corporation that may be owned by him at the time of his death; second, all stock that may be owned by Max Fuhrman Petroleum Company; and third, the will directed that Fuhrman Investment Company, an Oklahoma corporation, be liquidated, and that appellant receive all shares in the Fuhrman Petroleum Corporation which were owned by it. On September 14, 1938, Max Fuhrman died. The will was admitted to probate in the County Court of Okmulgee County, Oklahoma, and appellant qualified as a co-executor thereof. On December 29, 1939, the County Court of Okmulgee County, Oklahoma, entered an order approving the final account of the co-executors, and decreed, among other things, that a total

of 81,503 shares of stock in Fuhrman Petroleum Corporation be transferred to Fred H. Fuhrman, and that he also receive whatever stock was due Max Fuhrman under the 1929 stockholders' escrow agreement. Pursuant to the order of the court, certificate No. 394 in the amount of 81,500.3 shares, and certificate No. 484, in the amount of 4,500 shares, were issued to appellant, with the result that he received a total of 86,000.3 shares from the estate of Max Fuhrman.

On the same date that Max Fuhrman executed the above will, he and Fred Fuhrman also executed a contract which provided as follows:

"Now, Therefore, Know All Men by These Presents:

"That for the oral agreement in writing, and for the further purpose of inducing the said Fred H. Fuhrman to continue to manage and direct the affairs of the Company, subject in all things to any legal conditions which might be imposed by its Board of Directors, the said Max Fuhrman and Fred H. Fuhrman agree as follows:

"I.

"That the ownership of a majority of the stock of said Fuhrman Petroleum Corporation shall remain vested in them and shall continue unchanged, and that neither will, except upon the consent of the other evidenced in writing, sell or dispose of any of the capital stock held and owned by him.

\*    \*    \*    \*    \*    \*

"And the said Max Fuhrman, in consideration of the services by the said Fred H. Fuhrman, as herein specified, and in recognition of the fact that the said Fred H. Fuhrman would have neither invested funds in nor have managed the affairs of the Fuhrman Petroleum Corporation, except for the existence of the foregoing agreement to the effect that the control of the Fuhrman

Petroleum Corporation was to be and would be retained by the said Max Fuhrman and the said Fred H. Fuhrman; and in consideration of the said Fred H. Fuhrman agreeing to serve without compensation as the agent and attorney-in-fact for the said Max Fuhrman, in the matters hereinabove set out, and in consideration of the benefits which he, the said Max Fuhrman, has heretofore received as a result of the labors of the said Fred H. Fuhrman, in the management of the Fuhrman Petroleum Corporation; and in consideration of the benefits which he expects to receive resulting from the continued management by the said Fred H. Fuhrman, of the Fuhrman Petroleum Corporation, and for the purposes of inducing the said Fred H. Fuhrman, to continue the management of said Company, and for the further purpose of establishing and guaranteeing the continued control of the affairs of said company after the death of the said Max Fuhrman in the said Fred H. Fuhrman; and further in consideration of the love and affection which he, the said Max Fuhrman bears toward and for his brother, Fred H. Fuhrman, the said Max Fuhrman has contracted and agreed, and does by these presents contract and agree that upon his death in the event he predeceases Fred H. Fuhrman, and only in such event, the possession of and fee simple title to all of the capital stock owned at such time by the said Max Fuhrman in the Fuhrman Petroleum Corporation, or in any other corporation or company which may succeed to its assets and properties, shall pass to and become vested in and become the property of the said Fred H. Fuhrman.

"In this connection, it is contracted that either of the considerations, separately above detailed, is a sufficient consideration of this agreement to convey.

"It is further contracted and stipulated that this agreement to convey the aforesaid stock shall be binding upon Fuhrman."

The court found that appellant "performed the services provided in such contract to be performed on his part; that said 86,000.3 shares were acquired by Fred H. Fuhrman under said contract and will of May 20, 1938 for services performed by the defendant in said contract; that said shares of stock were acquired by (appellant) during the marriage of the parties hereto" and, upon the basis of such finding, the trial court concluded that the 86,000.3 shares of stock acquired from the estate of Max Fuhrman were community property.

There is no evidence that appellant ever filed said contract or any claim based on said contract with the executors of the estate of Max Fuhrman in the probate court of Okmulgee County, Oklahoma. There is no basis to support the court's holding and finding that F. H. Fuhrman acquired said stock under the contract of May 20, 1938. The will of May 20, 1938 devised said stock to Fred H. Fuhrman without any strings whatsoever; no services were required to be performed by the defendant whatsoever, and if the court intended by his finding above that the appellant was required to perform the services mentioned in said contract before being able to take under the will of May 20, 1938, such is without foundation. It may have been that appellant could have acquired said stock by virtue of said contract, independent of the will. The fact remains that he did not acquire his stock by making claim on the contract. He took the stock under the will of Max Fuhrman. There is no dispute as to these facts. To say the least, appellant Fred Fuhrman had a choice; he could either take under the will, or he could take under the contract. Having taken the stock under the will in 1938, which fact is without dispute, the trial court cannot now say, upon proof made for the satisfaction of certain conditions some eighteen years later, that he took such stock under said contract. The estate paid the inheritance tax on said stock required by the Federal government. No income tax was either levied by the Federal government or paid by Fred Fuhrman. While this fact does not control, it could have been, and may have been, a deciding factor to Fred Fuhrman as to whether he would take the stock under the will or under the contract. If, as contended by the appellee, and as held by the court, this stock was not acquired by bequest or by gift, but by purchase in consideration of services, then the appellant would have owed income tax, which it is common knowledge is considerably higher than inheritance tax. Having held that the 86,000.3 shares of Fuhrman Petroleum Corporation stock was acquired by Fred H. Fuhrman by devise from his brother, Max Fuhrman, it follows that such stock is the separate property of Fred H. Fuhrman.

■ While it is not necessary for us to pass on the question, we will say that, had F. H. Fuhrman acquired such stock under the contract, we would be bound to hold that the services required of Fred H. Fuhrman under the contract of May 20, 1938 were so insignificant, as compared to the value of the stock, that the contract was donative in character. It must be borne in mind that F. H. Fuhrman was drawing a handsome salary from Fuhrman Petroleum Corporation; he was under duty to give his best interests to make said company successful. He, being one of the principal stockholders, it was naturally to his interest that he give his best efforts in the interests of the company's success. As far as acting as proxy for his brother, it is foreign to all business and corporate experience that management ever receives compensation for acting as proxy for its stockholders. It is common knowledge that the management of corporations, in sending out notices of stockholders' meetings, generally request the stockholders who cannot be present at the stockholders'

meeting to give their proxies to management to be voted for said stockholders without, of course, any charge for such service. In other words, the services to be performed by Fred Fuhrman in this contract were such that he would perform anyway, for his own interest, and because he was already obligated to do so. The record is full of facts showing the closeness of these two brothers, and it is hard to conceive that this contract was of any other character than donative, and if we were required to determine this issue, we would hold that, had Fred H. Fuhrman received such stock under said contract, it would have been as a gift.

■ We think the trial court was in error in declaring the 6613.9 shares of stock of Fuhrman Petroleum Corporation, evidenced by certificates 254 and 255 as property belonging to the community estate of the marriage. It is undisputed that these shares of stock came to Fred Fuhrman by virtue of his ownership of stock in the Fuhrman Petroleum Company, a Delaware corporation, which was organized in 1920. This company was liquidated in 1939 and the shares of stock in the Fuhrman Petroleum Corporation owned by said Delaware Company was distributed to the stockholders in proportion to the shares of stock owned by them in said Fuhrman Petroleum Company. It is also undisputed that Fred Fuhrman, appellant, acquired his stock in said petroleum company prior to his marriage with the appellee, and while said certificates of stock were acquired by Fred Fuhrman during his marriage, there is no question but what said stock was the separate property of Fred Fuhrman by virtue of his ownership of the stock in the company which was acquired prior to his marriage.

■ We overrule appellant's point contending that the court was in error in holding that the 6,000 shares of stock of the Fuhrman Petroleum Corporation evidenced by certificate No. 227 which was "sent" by Max Fuhrman to Fred H. Fuhrman on September 10, 1937, was community property. Appellant contends that said stock was a gift from his brother, Max Fuhrman, and therefore belonged to his separate estate rather than the community. The record does not reflect under what condition this stock was sent to F. H. Fuhrman. There is no letter and no word from Max Fuhrman as to why or under what condition this stock was sent to F. H. Fuhrman. We do have the testimony of F. H. Fuhrman's accountant that the stock was carried on the books at no cost. We believe this is insufficient evidence to overcome the presumption that such stock acquired during the marriage is community. The burden was on appellant to prove that he received this stock as a gift. The trial court determined, and we think properly, that that burden had not been met.

It appears to be agreed that the holder of stock in the Fuhrman Petroleum Corporation was entitled to one share of stock in Fuhrman Minerals, Inc., for each 15.5184 shares of stock held in the Fuhrman Petroleum Corporation, as of the time of the formation of the Fuhrman Minerals, Inc. in 1953. Consequently, the shares held by Fred Fuhrman as his separate property, the shares held by the appellee as her separate property, and the shares owned by the community estate as of the time of the formation of Fuhrman Minerals, Inc., are in proportion to the ownership of each estate in Fuhrman Petroleum Corporation.

As stated at the outset, the court divided the property by setting aside to appellee her separate property, to appellant his separate property, and dividing the community property equally between the parties. Appellee contends that the division of the property as made by the court ought to stand, regardless of what we find to be the separate property of each party or community property.

Art. 4638, Vernon's Ann.Civ.St., gives the trial court the authority to divide the property as he shall "deem just and right, hav-

ing due regard to the rights of each party and their children, if any". In construing this statute, it has been held that the most obvious construction of the statute is that the separate property should be restored to its owners, respectively, and that such division of the community be made as may seem just and right: Fitts v. Fitts, 14 Tex. 443; Puckett v. Puckett, Tex.Civ.App., 205 S.W.2d 124.

Of course it has been many times held that when circumstances require it, the trial court may set aside separate property of one party to the divorce, to the other, especially where one party is without means of support or has children to support, but we have no facts in this case, or findings of the court, which we think would justify the setting aside of separate property of the appellant for the support of appellee. The judgment of the court sets aside to appellee a sizeable separate estate, of a probable value of $140,000, and half of the community estate, which has a probable value of $700,000. This is considered more than ample to enable appellee to continue to live in the style to which she has become accustomed as the wife of appellant. There are no children of this marriage, and appellee is a healthy, educated person, capable of earning an income if she so desires. As stated before, the court made no findings justifying a different method of division from that which he has made.

We therefore remand the case, with instruction to the trial court to reform its judgment so as to set aside to the appellant, as his separate property, the stocks held herein to be separate property of appellant, rather than community property. In all other things, the judgment of the trial court is affirmed.

McGILL, J., not participating.