William Bruner CAMPBELL, Appellant,

v.

Laura Fenner Williams CAMPBELL,
Appellee.

No. 18078.

Court of Civil Appeals of Texas,
Fort Worth.

July 26, 1979.

Rehearing Denied Sept. 13, 1979.

Graves, Dougherty, Hearon, Moody & Garwood and Robert J. Hearon, Jr., Austin, for appellant.

Minton, Burton & Fitzgerald and Roy Q. Minton, Austin, for appellee.

## OPINION

HUGHES, Justice.

William Campbell has appealed the judgment of the trial court which awarded his wife a divorce and one-half of his separate personal property, the bulk of which was promissory notes in the face amount of approximately $1,200,000.00.

We affirm.

The Campbells married in 1965. Campbell was 42. Mrs. Campbell was 27. They had two children, now ages 12 and 10 years. Mrs. Campbell sued for divorce in January, 1975. Trial court appointed her temporary managing conservator in March, 1975, and ordered that the children not be removed from its jurisdiction. Campbell disappeared with the children in September, 1975. In December, 1975, trial court made a temporary order that Mrs. Campbell have exclusive management of all the couple's property, both separate and community.

The case was tried on the merits in June, 1976. At the time of trial the whereabouts of Campbell and the children were still unknown to the court, Mrs. Campbell and attorneys for both parties. Campbell's attorneys filed a motion for continuance based on their inability to properly represent their client in the client's absence, but it was refused. In August, 1976, the trial court granted the divorce, appointed Mrs. Campbell the children's managing conservator, and divided the estate of the parties. Mrs. Campbell was awarded all of the community property, ordered to pay the community debts, and also awarded a 50% interest in a series of promissory notes payable to Campbell. The divorce decree stated that these notes were Campbell's separate property.

The decree further provided that Campbell would have no rights to the children pending further court orders and that no child support was ordered subject to review by the court when he personally appeared before it. Campbell was found to be at fault in the break up of the marriage. Mrs. Campbell was ordered to pay both parties' attorney fees, including those expended by either side on appeal.

An appeal by Campbell's attorneys was attempted from this order but it was dismissed. The express postponement of the issues of visitation and child support for later judicial determination was held to have rendered the judgment interlocutory. *Campbell v. Campbell,* 550 S.W.2d 164, 166 (Tex.Civ.App.—Austin 1977, no writ).

A second hearing was held in July, 1977. Campbell appeared in person. He and the children were found in Scotland. A Scottish court in December, 1976, removed the children from him and returned them to Mrs. Campbell pursuant to the Texas court order.

Since the issues of child custody, property division and fault had been decided in his absence, Campbell requested that he be allowed to present his evidence on them at the second hearing. The trial court refused to reopen these issues and limited the hearing to the visitation and support questions left undecided by the August, 1976 divorce decree. After the hearing, the trial court entered a second divorce decree, which incorporated the original decree and dealt with visitation and support.

Campbell was appointed the children's possessory conservator. His visitation rights were detailed. To enforce the return of the children to their mother after his periods of visitation, Campbell was required to post a bond in the amount of the face value of his separate property promissory notes and further secure the bond by the notes themselves. The bond and notes were to be furnished to Mrs. Campbell's attorney prior to visitation. Child support was expressly not awarded in view of the partition of the property of the parties in the original divorce decree.

By his first three points of error Campbell attacks the property division. The court in the original decree divided the property as follows: Furniture and other items of personal property such as art works acquired by either party before marriage were awarded to that party. Items of this type acquired after their marriage were awarded to Mrs. Campbell subject to her testimony that should Campbell have a "real need" for any of this property, she would convey it to him when he returned to the jurisdiction. Mrs. Campbell was awarded the family home in Austin, subject to a first mortgage of approximately $68,000.00 and an additional community debt attributable to it of approximately $46,000.00. The Austin house had been for sale for about a

year prior to the first trial and one firm offer of approximately $90,000.00 had been received for it.

The court found that Campbell's separate estate consisted in part of a series of promissory notes of substantial value. The decree stated the notes should be divided in an equitable manner, and awarded Mrs. Campbell an undivided 50% interest in them as her separate property. Campbell was awarded the other 50% interest as his separate property.

Mrs. Campbell was also awarded all funds on deposit of whatever nature such as checks, cash and bank deposits. Included were proceeds from the sale of a prior residence in Tennessee consisting of a check for $24,325.89 and a note in the principal amount of $30,000.00. The note was specifically awarded to Mrs. Campbell as her separate property.

Pursuant to the December, 1976 property management order Mrs. Campbell had maintained two separate bank accounts which at time of trial had balances of $532.01 and $77.81. She also tendered, at trial, payments and interest totaling $5,538.82 on Campbell's promissory notes. The above amounts were included in the funds awarded to her. She was ordered to pay all community debts, estimated to total $11,000.00, out of the funds awarded to her. She was also ordered to pay attorney's fees for both parties totaling $20,490.00 and all court costs.

The community estate had little net worth. There was evidence that not all of the bills had been discovered and that many of the community debts were incurred by Campbell. There was also evidence that Mrs. Campbell's parents loaned her money to support herself and pay bills for the period of several months after Campbell left the country and before she obtained any funds as a result of the court order making her the temporary manager of the couple's property.

▪ Under the authority of Tex.Family Code Ann. § 3.63 (1975) (hereinafter cited as § 3.63), the trial court in a divorce case is required to divide the estate of the parties in a manner it deems just and right, having a due regard for the rights of each party and the children of the marriage.

In his first point of error Campbell argues that the trial court lacked both the statutory and constitutional authority to award his wife half of his separate promissory notes. The series of promissory notes was received by Campbell as consideration for the sale of shares of some stock he had acquired prior to his marriage, therefore, they were clearly his separate property and he complains that the court awarded Mrs. Campbell approximately $600,000.00 of his separate estate.

Campbell's arguments present us with the issue of whether a trial court in a divorce action has the authority to divest one spouse of his separate personal property and award it to the other. He argues that the decision in *Eggemeyer v. Eggemeyer*, 554 S.W.2d 137 (Tex.1977) should be construed as holding that § 3.63 does not statutorily and could not constitutionally authorize a trial court to divest a spouse of any type of separate property in a divorce action. While he concedes that the only separate property before the court in *Eggemeyer* was realty, he argues that the opinion's language, rationale and constitutional analysis are equally applicable to separate personalty. He concludes that since *Eggemeyer*, Texas trial courts are prohibited from divesting a spouse of any type of separate property in a divorce proceeding. In short, he wishes us to extend *Eggemeyer's* holding to the divestiture of separate personalty.

All of the intermediate appellate courts which have directly or indirectly considered the question have refused to apply the *Eggemeyer* rationale to separate personalty. See e. g. *Musslewhite v. Musslewhite*, 555 S.W.2d 894 (Tex.Civ.App.—Tyler 1977, writ dism'd); *Campbell v. Campbell*, 554 S.W.2d 10 (Tex.Civ.App.—Fort Worth 1977, no writ); *Muns v. Muns*, 567 S.W.2d 563 (Tex. Civ.App.—Dallas 1978, no writ); *Eichelberger v. Eichelberger*, 557 S.W.2d 587 (Tex. Civ.App.—Waco 1977, rev'd on other grounds, 582 S.W.2d 395 (1979); *York v.*

*York,* 579 S.W.2d 24 (Tex.Civ.App.—Beaumont 1979, no writ); *Matter of Marriage of Trujillo,* 580 S.W.2d 873 (Tex.Civ.App.—Texarkana 1979, no writ).

Further, Campbell's interpretation of *Eggemeyer* would have us overrule a long line of cases allowing the discretionary division of separate personalty. The law prior to *Eggemeyer* was clear: Trial courts were vested with wide discretion in disposing of any and all of the parties' personal property, separate or community. See e. g., *Fitts v. Fitts,* 14 Tex. 443 (Tex.1855); *Hedtke v. Hedtke,* 112 Tex. 404, 248 S.W. 21 (1923); *Cooper v. Cooper,* 513 S.W.2d 229 (Tex.Civ.App.—Houston [1st Dist.] 1974, no writ); *Ramirez v. Ramirez,* 524 S.W.2d 767 (Tex.Civ.App.—Corpus Christi 1975, no writ); *Muns v. Muns,* 567 S.W.2d 563 and cases cited therein at 564–65 (Tex.Civ.App.—Dallas 1978, no writ).

■ Of course, the court's discretionary power to invade one spouse's separate property for the benefit of the other spouse is not unlimited. The circumstances of the case must make such action necessary to reach a just and fair division of the parties' property. *Fuhrman v. Fuhrman,* 302 S.W.2d 205 (Tex.Civ.App.—El Paso 1957, writ dism'd); *Trader v. Trader,* 531 S.W.2d 189 (Tex.Civ.App.—San Antonio 1975, writ dism'd); *Hedtke v. Hedtke, supra.*

*Hedtke* is the leading authority cited in the more recent cases listed above as the basis for the rule that separate personalty may be invaded in a divorce property division. The holding in *Hedtke* was that a divorce decree may award the wife the right to occupy as a homestead during her life a tract of land owned by the husband as his separate property. *Hedtke* is discussed by the majority in *Eggemeyer.* It criticized the *Hedtke* court as being overbroad in stating that the husband owed family support obligations to his divorced wife as distinguished from those owed their children, but it went on to quote the following language from *Hedtke* showing that "the (*Hedtke*) court clearly recognized the limitations upon divesting title:

" 'For the purpose of doing equity, the court may award all the personal property to either spouse, and may subject the income, rents, or revenues of all real estate belonging to either or both of the spouses, to the support of either or both of them, or to the education and support of the children.' " 248 S.W. at 22, quoted in 554 S.W.2d at 141.

The majority in *Eggemeyer* also characterized as dictum *Hedtke's* language that a divorce court may dispose of "any and all property of the parties, separate or community" in the exercise of a wide discretion which will be corrected only when it is abused. However, it also stated that while the quoted language was not essential to the decision in *Hedtke,* it was in general a "sound rule". Nowhere does the majority in *Eggemeyer* discuss the different treatment long used in this state in a discretionary division of separate personal property.

*Muns, supra,* distinguished *Eggemeyer* at length from the line of cases based on the rule in *Hedtke* dealing with the discretionary division of separate personalty. Mrs. Muns had been awarded 25% of her husband's military retirement benefits. The Dallas court held that a trial court has discretion under § 3.63 to invade the separate personal property of one spouse for the benefit of the other when necessary to a just and fair division. 567 S.W.2d at 564.

It refused to apply *Eggemeyer* to separate personalty and concluded that its holding is limited to real estate, the only kind of property mentioned in that opinion.

*Ramirez, supra,* was expressly approved by the majority in *Eggemeyer.* The holding in *Ramirez* was that the change in the statute (from art. 4638 to Family Code § 3.63) did not change the law with respect to divestment of title to separate real estate. However, *Ramirez* also restated the *Hedtke* rule that the restriction on divestment of either spouse's separate property relates only to real estate, whereas courts have wide discretion in disposing of all of the parties' personal property, separate or community. 524 S.W.2d at 769.

It has been held since *Eggemeyer* that in a proper case the trial court in divorce proceedings has the power to divest a spouse of title to his separate personalty. *Eichelberger, supra.* The trial court had awarded Mrs. Eichelberger a share of her husband's expected disability and pension benefits under the federal Railroad Retirement Act of 1974, 45 U.S.C.S. § 231 et seq., which he had earned both before and during their marriage. Mr. Eichelberger had argued that *Eggemeyer* had abolished the *Hedtke* rule but the Waco court rejected this contention. The court noted that the only question resolved by *Eggemeyer* was the divestment of separate realty.

The Texas Supreme Court had at first refused to grant *Eichelberger's* application for writ of error for "want of jurisdiction". 582 S.W.2d 395. However, it granted his application upon motion for rehearing because the court of civil appeals decision conflicted with the recent decision of the United States Supreme Court forbidding recovery in a divorce situation by non-employee spouses of benefits under the Railroad Retirement System. *Hisquierdo v. Hisquierdo,* 439 U.S. 572, 99 S.Ct. 802, 59 L.Ed.2d 1 (1979).

In *Hisquierdo* the court held that benefits presently payable or expected in the future under the Act are not to be treated as "property" subject to division by a trial court in a divorce suit. It further held that state courts in community property states cannot "anticipate" such benefits by awarding the non-employee spouse other of the couple's property to compensate them for the loss of benefits.

The Texas Supreme Court in *Eichelberger* held that it has jurisdiction to correct a Texas court of civil appeals decision which is contrary to a United States Supreme Court decision. 582 S.W.2d 395. It then concluded that the holding of the court of civil appeals affirming the trial court's judgment which awarded Mrs. Eichelberger a portion of Eichelberger's railroad retirement benefits was erroneous and reversed and rendered that portion of it. It affirmed the remainder of the trial court's judgment. 582 S.W.2d 395. It also refused to grant alimony under these circumstances to compensate Mrs. Eichelberger for the loss of any property rights she had in the benefits because it would probably be viewed as an attempt to circumvent the proscription in the Act against "anticipation" of benefits, and further, because it is the legislature's function to determine whether alimony should be authorized. The opinion does not mention the court of civil appeals discussion of *Eggemeyer.*

 We conclude that the holding in *Eggemeyer* is limited to separate real estate, the only type of property before the court in that decision. *Muns, supra.* While some of the reasoning and language in *Eggemeyer* would also seem to be applicable to separate personal property, it must be construed in context with reference to the issues then before the court and the specific decision made by it. *Ferguson v. Johnson,* 57 S.W.2d 372 (Tex.Civ.App.—Austin 1933, writ dism'd). Therefore, we do not think it necessary or proper to give that decision a constitutional as opposed to a statutory foundation. We hold that a trial court has discretion under § 3.63 to invade a spouse's separate personal property for the other spouse's benefit when necessary to a just and fair division (except for railroad retirement benefits). *Muns, Cooper, Musslewhite, Ramirez, supra.* The award of separate personal property in this case neither violated the law nor Campbell's constitutional guarantees.

 Campbell's second point of error contends that to allow divestiture of separate personalty, while prohibiting it for separate realty, constitutes a denial of equal protection under the law. He argues this creates a classification based on land ownership favoring those who own realty and that this discrimination is entirely arbitrary, bears no rational relationship to any legitimate governmental interest, and therefor violates both the Texas and United States Constitutions.

 We overrule this point. The rationale for allowing divestiture of separate

personalty in a proper case is to permit the court to do equity between the parties. *Hedtke, supra.* It serves much the same purpose as alimony in other states. Further, there is no constitutional requirement that each and every piece of property be treated precisely the same way. *Mumme v. Marrs,* 120 Tex. 383, 40 S.W.2d 31 (1931). If there were, much of our tax structure would fall. Real property and personal property are not constitutionally required to bear the same burdens of ownership.

Since we have held that the trial court had discretion to include separate personalty in the property division, the issue is then whether, as alleged in Campbell's third point of error, that discretion was abused. Campbell alternatively argues that there was no evidence to support this division or that it was against the great weight and preponderance of the evidence.

■ As previously discussed, an award of separate personalty or an unequal division of community property is justified only if supported by evidence showing circumstances which necessitated it in order to effect a fair and just property division. *Cooper v. Cooper,* 513 S.W.2d 229 (Tex.Civ. App.—Houston [1st Dist.] 1974, no writ).

> "Factors to be considered include the disparity of the earning power of the parties, as well as their business opportunities, capacities and abilities; *In re Marriage of McCurdy,* 489 S.W.2d 712 (Tex. Civ.App.—Amarillo 1973); the physical condition of the parties, probable future need for support, and educational background; *Dobbs v. Dobbs,* 449 S.W.2d 119 (Tex.Civ.App.—Tyler 1969). The fault in breaking up the marriage and the benefits innocent spouse would have received from a continuation of the marriage are factors which the court may consider. *Hooper v. Hooper,* 403 S.W.2d 215 (Tex. Civ.App.—Amarillo 1966). These and other matters must be evaluated by the trial court in determining a just and fair division of the property." Id. at 233–34.

Other relevant factors which have been listed are the size of the community estate and the relative sizes of the separate estates.

*Currie v. Currie,* 518 S.W.2d 386 (Tex.Civ. App.—San Antonio 1974, writ dism'd).

■ The trial court's judgment as to the property division will not be disturbed without a showing by Campbell that it clearly abused its discretion. Further, this court must presume the trial court properly exercised its discretion. *Bell v. Bell,* 513 S.W.2d 20 (Tex.1974).

■ In its findings of fact and conclusions of law on the property division the trial judge found that: Campbell was entirely at fault in the break up of the marriage; the community estate is very small in comparison with his separate estate and Mrs. Campbell has no substantial separate estate; Campbell's ability to generate income is greater than Mrs. Campbell's (he being a college professor and she a homemaker only with no real formal job training); Mrs. Campbell, but for Campbell's fault, would have received great benefits in income from his separate estate and earning ability; that the division of the estate is just and right; and that "the division of the estate of the parties set forth in the judgment heretofore entered in this cause is proper and correct under the facts of this case and the law".

It is plain from the evidence that the community estate had little net worth. Therefore, if the trial judge found that either of the spouses had little earning capacity or ability, or the children needed support, or there were other equities to adjust, the only resource available was separate personal property, which the record shows only Campbell possessed in any appreciable amount. See *Fuhrman v. Fuhrman, supra.*

As to Campbell's contention that these notes were worth approximately $600,-000.00, the record shows this is only their face value and fails to show their real worth. We note the record shows that virtually every term of the notes can be varied except the principal amount.

There is ample evidence to support the findings. Therefore, we hold, under the circumstances of this case, that there was

sufficient evidence to support the trial judge's manner of dividing the property including the invasion of Campbell's separate personalty. No abuse of discretion having been shown, we overrule Campbell's third point of error.

By his fourth point of error Campbell alleges the trial court erred as a matter of law in awarding Mrs. Campbell the cash and note, secured by a mortgage which were the proceeds from the sale of their prior residence in Tennessee. Since it is well established that Texas trial courts lack jurisdiction over foreign real property, Campbell reasons that the proceeds from the sale of the Tennessee realty were also beyond the court's jurisdiction.

We disagree. Even though the note was secured by real estate located outside the State of Texas, it is well settled that evidences of debt and money are personal property the situs of which is the owner's domicile. Both parties pled that their domicile was Texas and the trial court found the parties' marital domicile to be Texas, therefore it did not err in exercising jurisdiction over the money and note.

Campbell's fifth and sixth points of error attack the overruling of his motion for a continuance. He first alleges that requiring the case to proceed to trial in his and the children's absence violated his right to due process of law under the Texas and United States Constitutions since they were material witnesses.

The motion for continuance states that "there is evidence" that Campbell "apparently absented himself from the jurisdiction of the Court" but that "as a matter of right and justice" the case should not be tried without him and that his attorneys would be unable to represent him adequately without his presence. Campbell asserts in his brief that his motion was denied without evidence that his absence was the result of lack of diligence on his part. He further contends that there was no showing of any compelling reason for holding an immediate trial.

Motions for continuance for want of testimony are governed by Tex.R. Civ.P. 252. It includes those cases in which a party is to testify and is unable to appear. *Panhandle Broadcasting Company v. Cercy*, 363 S.W.2d 792 (Tex.Civ.App.—Amarillo 1962, no writ). Such a motion is addressed to the trial court's sound discretion and an order granting or refusing it will not be disturbed on appeal unless such discretion was abused. *J. C. Penney Company v. Duran*, 479 S.W.2d 374 (Tex.Civ.App.—San Antonio 1972, writ ref'd n. r. e.).

Mere absence of a party is not enough to entitle him to a continuance. It must be shown that the applicant has been diligent in his efforts to be present at trial or had a reasonable excuse for not being present. *Erback v. Donald*, 170 S.W.2d 289 (Tex.Civ.App.—Fort Worth 1943, writ ref'd w. o. m.). It was Campbell's legal duty to keep himself posted as to the setting of the case for trial, and to be present to testify and aid his counsel. *Brooks v. Brooks*, 561 S.W.2d 949 (Tex.Civ.App.—Tyler 1978, no writ); *Turnbow v. Southern Engine & Pump Co.*, 237 S.W. 321 (Tex.Civ.App.—Galveston 1922, no writ). When the ground for a continuance is a party's absence, good cause must be more clearly shown than in those cases where the ground is a witness's absence. *Goodwin v. American Nat. Bank*, 236 S.W. 780 (Tex.Civ.App.—Beaumont 1921, no writ).

Campbell contends there was no need for an immediate trial. We hold the trial judge was under no compulsion to continue the case until some vague future time when Campbell perhaps would decide to return to the jurisdiction. The motion alleges no facts that could be construed as a reasonable expectation of even locating Campbell and the children. *Rainwater v. Haddox*, 544 S.W.2d 729 (Tex.Civ.App.—Amarillo 1976, no writ). As for Campbell's contention that there was no evidence that his absence was the result of a lack of diligence on his part, we hold there was evidence that he voluntarily absented himself. This shows his lack of personal diligence in seeing that his testimony was

available. See *Ray v. Ray*, 542 S.W.2d 209 (Tex.Civ.App.—Tyler 1976, no writ). Where, as here, the continuance motion neither stated that due diligence had been used to procure testimony nor alleged facts showing what diligence was used, the denial of such motion is proper. *J. C. Penney Company v. Duran, supra.*

■ Further, the motion did not conform to Tex.R.Civ.P. 252's requirement of setting forth the substance of Campbell's purported testimony. It states that he is a "necessary and essential witness on all issues involved in this case, including questions of child custody as well as property rights", and that his attorneys are "in serious danger of being unable to establish many relevant facts which could be established through the testimony of William B. Campbell". These are only generalized statements as to what his testimony would be if he were present. Tex.R.Civ.P. 252 requires that the substance of the testimony be more specifically stated than here. For this reason alone the trial court did not abuse its discretion in overruling the motion for continuance. *Panhandle Broadcasting Company v. Cercy, supra*; *Emmco Insurance Company v. Burrows*, 419 S.W.2d 665 (Tex.Civ.App.—Tyler 1967, no writ).

■ It is uncontroverted that Campbell voluntarily absented both himself and the children. In its findings of fact the trial court stated that Campbell "was made aware of the fact that this cause was set for trial on its merits on June 14, 1976, and voluntarily absented himself from Travis County at such time." Both he and his counsel admit he left with the children in defiance of a court order. We also note that the case went to trial approximately 17 months after the original petition was filed. In view of the principles of law stated above, the clear state of the evidence and the court's finding, we conclude there was no error in the overruling of the motion for continuance due to the children's and Campbell's absence. *Johnson v. Johnson*, 296 S.W.2d 615 (Tex.Civ.App.—Waco 1956, no writ).

We hold the trial court's denial of the motion for continuance under these facts was not arbitrary and therefore did not violate due process of law. The court did not deprive Campbell of the benefits of his and the children's testimony, his own actions did so. This contention is overruled.

Campbell also argues the trial court abused its discretion in not granting a continuance after allowing Mrs. Campbell to amend her pleadings within seven days of trial. The alternative ground for the motion was the amendment of Mrs. Campbell's pleadings. Campbell's attorneys claimed in the motion that they came as a "complete surprise" and "particularly in view of respondent's (Campbell's) absence, but not solely because of it," they were unable to be prepared on these issues by trial time.

The amendments in question added cruel treatment as a ground for the divorce, requested that Mrs. Campbell be awarded all of the parties' property, both separate and community, and requested that Campbell be enjoined from removing the children from Mrs. Campbell's custody should she be appointed managing conservator. He alleges these amendments raised new matters that were material to the case, had significant impact on the nature of the case, operated as a surprise and dictated additional preparation and evidence on his part.

■ Whether or not a continuance is granted on the basis of an amendment to pleadings rests in the sound discretion of the trial judge. He is to consider all of the circumstances in the case and unless his discretion has been abused, an appellate court will not reverse. *International & G. N. R. Co. v. Howell*, 101 Tex. 603, 111 S.W. 142 (1908). Campbell had the burden of convincing the trial court that he was entitled to the continuance either by making a satisfactory showing or making it otherwise apparent that because of the amendment, he was not ready for trial. When reviewing the denial of a motion for continuance, this court must presume the trial court's judgment was correct. 12 Tex.Jur.2d *Continuance* § 33 (1960).

■ As is apparent from our previous discussion of the record in this case, the amendments were not the source of Campbell's problems, his deliberate absence was. We hold under these circumstances there was no abuse of discretion by the trial court in denying his motion for continuance on the basis of the amendments. His sixth point of error is therefore overruled.

■ Campbell's seventh and eighth points of error attack the trial court's action in trying the issues of conservatorship and fault in his absence. He argues that the trial court had an opportunity to hear his and the children's personal testimony on these issues in the hearing held after the dismissal of his first appeal. He argues the court decided these issues without hearing and considering all of the available evidence.

He contends that the appointment of a managing conservator without a meaningful consideration of the qualifications of both parents violates Tex. Family Code Ann. §§ 14.01(b) (1975) and 14.07(b) (1977) * and therefore constitutes a reversible abuse of discretion. Since the trial judge had the opportunity to question Campbell and evaluate his suitability to serve as managing conservator in the second hearing but refused to do so, Campbell reasons the trial court chose to exercise its discretion in appointing a managing conservator on only a portion of the available evidence. He claims his qualifications were not even considered.

As to the fault issue, Campbell argues he had no opportunity to prepare for it before the first hearing and was denied the opportunity to address it at the second.

These contentions are overruled. At the risk of becoming repetitious we once again note these problems all were caused not by any error on the part of the trial court but by Campbell's deliberate absence. There was a full hearing held on these issues after due notice had been given all the parties.

Instead of coming forward and presenting all of the evidence available to him, Campbell voluntarily chose to withhold it. The court's actions did not deprive Campbell of his opportunity to be heard, he deprived himself.

Under these circumstances we hold it was not error for the court to refuse to reopen these issues that had already been litigated simply because Campbell decided the outcome might be more favorable to him if he and the children appeared after all. The court had before it sufficient evidence on which to base a determination of these issues, whether or not it had before it all possible evidence.

All points of error having been reviewed, they are all overruled. Therefore, judgment is affirmed.

---

* § 14.01(b) provides that the trial court "shall consider the qualifications of the respective parents without regard to the sex of the parent."

§ 14.07 sets forth the requirement that the paramount consideration is the child's best interest and (b) provides that in determining this, "the court shall consider the circumstances of the parents."