**Edna Probert OSSORIO, Appellant,**

v.

**Gloria LEON and Adolfo Leon, Appellees.**

**No. 04–84–00365–CV.**

Court of Appeals of Texas, San Antonio.

Dec. 31, 1985.

Rehearing Denied Feb. 18, 1986.

220

Francis P. Maher, Maher & Maher, Laredo, Luther H. Soules, III, Susan C. Shank, Soules, Cliffe & Reed, San Antonio, for appellant.

Carmen Ramos, Laredo, for appellees.

## OPINION

Before ESQUIVEL, BUTTS and REEVES, JJ.

REEVES, Justice.

This is an appeal from a summary judgment wherein it was held that the disbursal of funds deposited in a Texas bank by a citizen of Mexico was governed by the law of Texas.

Appellant, Edna Probert Ossorio (Ossorio) and her husband, General Adolfo Leon Ossorio, citizens of the Federal District of Mexico, deposited funds in the International Bank of Commerce of Laredo. The ac-

count provided that all deposits would be owned by the depositors as joint tenants with the right of survivorship. After the death of General Ossorio, appellant's attempt to withdraw the funds was challenged by appellees, two children of the General by prior marriages, who contended they were entitled to a portion of the funds under the descent and distribution laws of the State of Texas. After the Bank interpled the funds, appellant and appellees moved for summary judgment and the court granted appellees' motion.

Appellant's pivotal ground of error is that the trial court erred when it applied Texas law instead of the law of Mexico to determine the ownership of the certificates of deposit.

Appellees' reply raises procedural issues concerning the timeliness of the filing of appellant's summary judgment motions and the quality of the summary judgment proof. A discussion of these matters must precede a discussion of the substantive law of this case.

■ A hearing was held in June 1983 on the motions for summary judgment, after which the trial court took the motions under advisement and asked for briefs from parties. Judgment was not rendered until July, 1984. In the interim, in addition to the requested briefs, the following documents were filed with permission of the court; (1) Appellant's Second Amended Motion for Summary Judgment (replacing the First Amended Motion for Summary Judgment filed without leave of court); (2) Appellant's attorney's affidavit concerning General Ossorio's will; (3) a copy of the English translation of the Civil Code of Mexico; (4) a copy in Spanish of the Civil Code of Mexico; (5) a notarized copy of appellant's affidavit (substituted for unsworn one filed earlier); (6) sworn legal opinions of Mexico's law by lawyers McKnight and Steta (substituted for unsworn opinions filed earlier).

Appellees complain that the documents were untimely filed and are therefore not proper support for appellant's motion for summary judgment. TEX.R.CIV.P. 166–

A(c) (Vernon Supp.1985) provides, however, that a summary judgment can be based on "pleadings, depositions, answers to interrogatories, admissions, affidavits, stipulations of the parties, and authenticated or certified public records, if any, on file at the time of the hearing, *or filed thereafter and before judgment with permission of the court ...*" (emphasis added).

Since the court specifically granted leave to file the above documents, the documents were properly before the trial court and before this court on appeal. The trial court's judgment recites that he considered the pleadings, the briefs, the arguments of counsel, and summary judgment evidence. We assume that he considered all the documents in his possession that can be characterized as fitting into the above categories.

■ Appellees further contend that some of the affidavits offered by appellant were based on hearsay. Granted that Mrs. Ossorio's and Mr. Salinas' statements include some hearsay as to the intent of the deceased, but there is abundant evidence of his intent completely separate and apart from those affidavits. Both the contract of deposit itself, signed by the deceased, and the will evince his intent to make a gift to his wife of the funds in their joint account, if his wife survived him. The affidavits of McKnight and Steta, both being legal opinions, are properly based on the facts as related to them, and are not considered hearsay.

■ Appellees objected to the proof of foreign law offered by appellant because the appellant failed to plead the foreign law, because appellant filed no motion to take judicial notice of the foreign law, because appellant attached no affidavit to the Civil Code of Mexico, and because appellant failed to produce a statute book of the Federal District of Mexico "purporting to have been printed under the authority thereof." Appellant is apparently referring to article 3718 of the Revised Civil Statutes, which was repealed in 1983.

Rule 203 of the Texas Rules of Evidence (Vernon Supp.1985), and Rule 184(a) of the Texas Rules of Civil Procedure (Vernon Supp.1985), provide:

> A party who intends to raise an issue concerning the law of a foreign country shall give notice in his pleadings or other reasonable written notice, and at least 30 days prior to the date of trial such party shall furnish to the opposing party or counsel copies of any written materials or sources that he intends to use as proof of the foreign law. If the materials or sources were originally written in a language other than English, the party intending to rely upon them shall furnish to the opposing party or counsel both a copy of the foreign language text and an English translation. The court, in determining the law of a foreign nation, may consider any material or source, whether or not submitted by a party or admissible under the rules of evidence, including, but not limited to affidavits, testimony, briefs, and treatises. If the court considers sources other than those submitted by a party, it shall give the parties notice and a reasonable opportunity to comment on the sources and to submit further materials for review by the court. The court, and not a jury, shall determine the laws of foreign countries. Its determination shall be subject to review on appeal as a ruling on a question of law.

When appellant introduced the foreign law, she requested, and the trial court granted, a postponement in order to comply with the above rules.

We find that the appellant, with leave of court to file the documents offered, and with the posponement granted by the court, complied fully with the applicable statutes in calling the foreign law to the attention of the court.

We have considered the other reply points raised by the appellees, regarding acknowledgments and jurats and find that appellant complied with TEX.R.CIV.P. 166–A(e) (Vernon Supp.1985) regarding form of affidavits to document her summary judgment proof.

■ The procedural and evidentiary issues aside, the remaining issue is the ownership of the certificates of deposit. Ownership depends on the validity of the interspousal gift. The validity of the gift depends on whether Texas law or Mexico law is applicable. If Texas law is applicable, the gift is invalid, regardless of intent of the donor, and the estate of General Ossorio owns half of the funds deposited in the Texas bank. *See Hilley v. Hilley,* 161 Tex. 569, 342 S.W.2d 565 (1961). If the law of Mexico is applicable, the gift is valid and complete upon the death of the donor spouse, and the appellant owns the entire sum as her separate property.

Appellee asserts that the law of the state in which the contract was made should govern the contract. Appellant argues that the law of the domicile of the parties should be applied.

Based on the following uncontroverted facts, we conclude that Mexico's law governs the ownership of this property:

> The Ossorios were citizens of the Federal District of Mexico, and had resided in Mexico during their forty-two year marriage.
>
> The property in controversy consists of proceeds of the liquidation of properties held by the Ossorios during their marriage. None of the certificates of deposit was purchased with funds earned in Texas.
>
> The funds were deposited in the name of Adolfo Leon Ossorio or Edna Probert Ossorio, and the signature card read "Joint Account—Payable to Either or Survivor."
>
> General Ossorio's will provided that on his death, his wife would own all his property if she survived him. The will made no provision for the appellees.
>
> No party to this suit (after the bank's interpleader was severed and settled) is a Texas citizen or domiciliary.

■ In choice of law questions dealing with ownership of personal property, as between spouses, the *rule of domicile* predominates. *King v. Bruce,* 145 Tex. 647,

201 S.W.2d 803, 809 (1947), *cert. denied,* 332 U.S. 769, 68 S.Ct. 82, 92 L.Ed. 355 (1947). *See also, Reeves v. Schulmeier,* 303 F.2d 802, 807 (5th Cir.1962); *In re Estate of Perry,* 480 S.W.2d 893 (Mo.1972).

In *King v. Bruce,* spouses who were Texas citizens and domiciliaries took property characterized in Texas as community property to New York for the declared purpose of avoiding the effects of Texas law, and there entered an agreement in an attempt to partition certain personal property so that the wife could hold her share of the property as her sole property for her benefit and enjoyment in Texas. The court held that notwithstanding the rule regarding the place of the contract, the rule of domicile predominated.

There is uncontroverted evidence that the Ossorios were citizens and domiciliaries of Mexico. They took property that was characterized in both Mexico and Texas as community property and deposited it in a Texas bank, each contracting at that time to make a gift to the other in the event of one's death. Her use and enjoyment of the funds would be in Mexico, not Texas. The Ossorios' motive could not have been to avoid the effects of Mexico's community property laws, because the contract they attempted to make was quite permissible in Mexico. Thus, the summary judgment proof established that all of the contacts considered significant in *King v. Bruce* were contacts between the Ossorios and Mexico, not between the Ossorios and Texas.

 Finally, appellees contend that where there is a conflict of laws issue, the place where the contract was made determines which law will be controlling. Their contention ignores the recent case of *Dun-*

can v. Cessna, 665 S.W.2d 414 (Tex.1984). The *Duncan* court establishes the rule that the validity of a contract is governed by the laws of the place where the contract was made has been abandoned in favor of the "most significant relationship" rule as set forth in section 6 of the *Restatement (Second) of Conflict of Laws* (1971).[1]

> [I]n all choice of law cases, except those contract cases in which the parties have agreed to a valid choice of law clause, the law of the state with the most significant relationship to the particular substantive issues will be applied to resolve that issue.

*Duncan v. Cessna,* at 421.

Here, the parties agreed to no valid choice of law clause. The resolution of this matter will have no effect whatsoever on the State of Texas or any of its citizens. The bank no longer has an interest in the law suit. Whether the bank pays the money to the appellant or the appellees is of no consequence to the bank or to the State. Also, the Ossorios' justified expectations deserve to be protected. Thus, the Ossorios have established the State of Mexico has a more significant relationship to the issue of ownership than the State of Texas. We consequently hold, based on *King v. Bruce* and *Duncan v. Cessna,* that the gift made to appellant was valid under the laws of Mexico, and that the laws of Mexico should apply.

Where both parties move for summary judgment, and one is granted and the other is overruled, *all questions* presented to the trial court may be presented for consideration on appeal, including whether the losing party's motion should have been overruled. *Crystal City I.S.D. v. Crawford,* 612 S.W.2d 73, 74 (Tex.Civ.App.—San Antonio 1981, writ ref'd n.r.e.).

---

**1.** (1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.

(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include

 (a) the needs of the interstate and international systems,

 (b) the relevant policies of the forum,

 (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

 (d) the protection of justified expectations,

 (e) the basic policies underlying the particular field of law,

 (f) certainty, predictability and uniformity of result, and

 (g) ease in the determination and application of the law to be applied.

We reverse this judgment and render summary judgment for the appellant.