**Ana Marcela Pasquel RAMIREZ (Formerly Known as Ana Marcela Pasquel De Zurita), Appellant,**

v.

**Juan Zurita LAGUNES, Appellee.**

**No. 13–89–117–CV.**

Court of Appeals of Texas, Corpus Christi.

June 29, 1990.

Robert Whittington, Brian G. Janis, Sanchez, Whittington & Sanchez, Brownsville, for appellant.

David C. Garza, Garza & Garza, Brownsville, for appellee.

Before NYE, C.J., and SEERDEN and KEYS, JJ.

## OPINION

NYE, Chief Justice.

Appellant and appellee are citizens of Mexico. The trial court denied appellant's Bill of Discovery suit for the disclosure of appellee's financial information in certain Texas financial institutions and granted appellee's Motion for Protective Order and/or to Quash prohibiting the release of the requested financial information. Appellant brings six points of error. We affirm.

Appellant, Ana Pasquel Ramirez (Pasquel), and appellee, Juan Zurita Lagunes (Zurita), were divorced in May, 1986, in a Mexican divorce proceeding. Both parties are and have always been citizens of the Republic of Mexico. Furthermore, both par-

ties have always been domiciled in Mexico, where Zurita is an attorney and Pasquel is a criminal court judge. The Mexican divorce decree withheld division of the community property estate for a later time.

In 1987, Pasquel filed a petition for Bill of Discovery naming Texas Commerce Bank—McAllen, Texas Commerce Bank—Brownsville, and Merrill Lynch, Pierce, Fenner, & Smith, Inc., as defendants. The purpose of this suit was to determine the nature and extent of the Texas accounts opened in Zurita's name. Pasquel alleged that these accounts, opened during the Pasquel–Zurita marriage, might possibly contain marital assets. She sought disclosure by the financial institutions and investment firm of the records for the years 1974 to 1987 of all financial and investment accounts which were in Zurita's name. Pasquel also provided the court with Letters Rogatory issued by the Mexican divorce court requesting the release of the financial records.

The defendant banks pleaded that the cause of action be abated until the court determined whether Zurita, the real party in interest in the Bill of Discovery suit, should be joined as a party and that Pasquel's compliance with the provisions of Tex. Rev.Civ.Stat.Ann. art. 342–705 (Vernon 1988 and Supp.1990) be contingent to their disclosure of the desired information. Merrill Lynch responded with an affidavit stating that Zurita had no account with said firm. Initially, the trial court denied the plea in abatement and ordered that the defendant banks inform Zurita of the trial court's order to furnish the requested financial information to the High Court of Justice of the Federal District of Mexico, 11th Court of Domestic Relations. The court also held that should Zurita file an appearance and an objection within the specified time, the defendant banks must produce the information for an in camera inspection prior to any disclosure to the Mexican court.

Thereafter, Zurita filed a special appearance wherein he alleged that the trial court lacked jurisdiction over his person, property or bank records, that Pasquel did not comply with the requirements of 28 U.S.C. §§ 1781 (Supp.1988), 1782 (1966) regarding the issuance of Letters Rogatory and that those Letters were subsequently recalled by the divorce court, and that the information sought through the Bill of Discovery could not be used by the Mexican court. These allegations were supported by an affidavit from a certified United States federal court interpreter who summarized the contents of three documents written in Spanish and filed in this suit. The first document was a letter dated March 26, 1987, from Jose Luis Rosas Rodriguez, Director of Contentious Legal Affairs of the Foreign Relations Ministry of the Republic of Mexico, stating that "for the reasons set forth in the proceedings, the Letters Rogatory had been returned without being honored." The second document was a letter dated January 29, 1987, from Ernesto Velarde, a Mexican attorney representing Pasquel, to the Mexican Consul in Brownsville, Texas. This letter requested that the Consul send the Letters Rogatory to the Texas law offices in which Velarde practiced because Pasquel had retained Velarde's firm to present the Bill of Discovery suit against the banks identified above even though it was not possible to honor the Letters Rogatory. The third document was the Mexican Decree of Divorce, dated May 9, 1986, which dissolved the parties' marriage and community property regime, but reserved the partition and distribution of the community property for a later date.

Pasquel amended her petition to name Zurita as a party. Zurita filed a second special appearance objecting to the jurisdiction of the Texas court. The trial court sustained the second special appearance, dismissed the cause for want of jurisdiction, and ordered Zurita to specially appear for the purpose of objecting to the release or disclosure of his financial records.

Pursuant to the special appearance order, Zurita filed a motion to quash and/or motion for protective order citing the provisions of Article 342–705 and the information contained in documents filed with the court to support his position to bar the disclosure of his financial records. After hearing both parties' arguments the trial court rendered its final judgment by granting Zurita's motion to quash and/or for

protective order. No findings of fact and conclusions of law were requested and none were filed by the trial court.

■ By her fourth point of error, Pasquel alleges that the District Court erred in allowing Zurita to specially appear for the purpose of presenting evidence to support the dismissal of the Bill of Discovery. Specifically, she asserts that the trial court had *in rem* jurisdiction because the Zurita bank accounts were located within Texas; thus, the special appearance was improperly granted.

The United States Supreme court recently held in *Shaffer v. Heitner*, 433 U.S. 186, 212, 97 S.Ct. 2569, 2584, 53 L.Ed.2d 683 (1977), that all assertions of state jurisdiction, including *in rem* and *quasi in rem* actions, must be evaluated according to the "minimum contacts" standard set forth in *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and its progeny. Thus, the *Shaffer* court abolished the general rule that mere presence of property within the forum state was sufficient to establish jurisdiction *in rem* by finding that such a rationale violated the due process clause of the United States Constitution.

In accordance with the federal standard, the Texas Supreme Court clarified its formula for establishing *in personam* jurisdiction in *Schlobohm v. Schapiro*, 33 Tex. Sup.Ct.J. 222, 784 S.W.2d 355, 358 (1990), stating:

(1) The nonresident defendant or foreign corporation must purposefully do some act or consummate some transaction in the forum state;

(2) The cause of action must arise from, or be connected with, such act or transaction. Even if the cause of action does not arise from a specific contact, jurisdiction may be exercised if the defendant's contacts with Texas are continuing and systematic;

(3) The assumption of jurisdiction by the forum state must not offend traditional notions of fair play and substantial justice, consideration being given to the quality, nature, and extent of the activity in the forum state, the relative convenience of the parties, the benefits and protection of the laws of the forum state afforded the respective parties, and the basic equities of the situation.

*See also Southern Clay Prod., Inc. v. Guardian Royal Exch. Assurance, Ltd.*, 762 S.W.2d 927, 930 (Tex.App.—Corpus Christi 1988, writ granted); *Perez Bustillo v. Louisiana*, 718 S.W.2d 844, 846 (Tex. App.—Corpus Christi 1986, no writ). Because of the *Shaffer* decision, these provisions also apply to the determination of a state's exercise of *in rem* and *quasi in rem* jurisdiction.

■ In the present case, merely locating monies in a Texas bank account did not invoke the court's jurisdiction because Pasquel did not establish that the cause of action arose from the opening of those accounts nor did she establish that Zurita's contacts with Texas were continuing and systematic. *See Texas Commerce Bank Nat'l Ass'n v. Interpol '80 Ltd. Partnership*, 703 S.W.2d 765, 771 (Tex.App.—Corpus Christi 1985, no writ). Additionally, Zurita filed an affidavit from a Mexican attorney which stated that, should the Texas court grant the discovery of the bank records, the information derived from those records could not be used by the Mexican divorce court for the division of the community property. Pasquel did not allege or attempt to establish that by opening the bank account Zurita violated Texas law or Mexican law. Furthermore, Pasquel did not establish that equity required that she be allowed to discover the records of Zurita's accounts. Our traditional notions of fair play and substantial justice are not served by allowing discovery of one's records when there is no showing of wrongdoing or that the information can be used in the alleged foreign litigation. Furthermore, as discussed below, we do not see that due process is served when a foreign defendant must submit to the court's jurisdiction solely for the purpose of objecting to the failure of a plaintiff to properly follow the provisions of a procedural statute. The trial court did not err by finding that it lacked both *in personam* and *in rem* jurisdiction over Zurita and his Texas bank records. Point of error number four is overruled.

By her sixth point of error, Pasquel asserts that the trial court erred in dismissing her bill of discovery proceeding on the basis of invasion of privacy or admissibility, or other principles of law. By her first point of error, Pasquel asserts that the trial court erred by dismissing the Bill of Discovery proceeding because such a proceeding is an allowable ancillary proceeding to any related proceedings in Mexico and alternatively, because the plaintiff in a Bill of Discovery need not be an American citizen. Specifically, Pasquel asserts that the Texas Rules of Civil Procedure authorize a bill of discovery in Texas courts for the specific purpose of locating assets or information in general to aid an ongoing or pending suit and that the main suit may be within or without Texas, there being nothing in the Rules to the contrary. We disagree.

Tex.R.Civ.P. 737 provides:

All trial courts shall entertain suits in the nature of bills of discovery, and grant relief therein in accordance with the usages of courts of equity. Such remedy shall be cumulative of all other remedies. In actions of such nature, the plaintiff shall have the right to have the defendant examined on oral interrogatories, either by summoning him to appear for examination before the trial court as in ordinary trials, or by taking his oral deposition in accordance with the general rules relating thereto.

A bill of discovery proceeding may be used to fill any gap in the Texas discovery process, but not to circumvent the rules defining the permissible scope of discovery. *See Ex parte Hanlon*, 406 S.W.2d 204, 206–07 (Tex.1966); *Moody v. Moody Nat'l Bank*, 302 S.W.2d 695, 698 (Tex.Civ.App.—Galveston 1957, writ dism'd). The petitioner for a bill of discovery must first show good cause for the discovery of relevant, material, and nonprivileged information, in accord with the usages of equity. Tex.R.Civ.P. 737; W. Dorsaneo, 1 Texas Litigation Guide § 10.101[1][c] (1989).

If a party seeks discovery to aid another proceeding, the court having jurisdiction over the main proceeding has exclusive jurisdiction to grant discovery relief. *Moody*, 302 S.W.2d at 698. In *Moody*, the plaintiff brought a bill of discovery suit under Tex.R.Civ.P. 737 to aid a contemplated suit to set aside the order probating a will admitted to probate in the probate court. The *Moody* court cited as fundamental the rule articulated by the United States Supreme Court in *Ex parte Boyd*, 105 U.S. 647, 671, 26 L.Ed. 1200 (1881), saying:

[C]ourts of equity will not entertain a bill for discovery to assist a suit in another court if the latter is of itself competent to grant the same relief; for in such a case the proper exercise of the jurisdiction should be left to the functionaries of the court where the suit is pending.

The court held that in accordance with the usages of equity, the proper exercise of jurisdiction for the bill of discovery in the instant case lay not with the district court but with the probate court where the main suit was pending.

The present case is analogous to the facts in *Moody* in that a suit to divide the community property regime was pending in a court different from the court where the bill of discovery suit was filed.[1] Similarly, the issue here is whether this Texas court has jurisdiction to grant discovery of information in Texas for use in a legal proceeding in a Mexican court.

The provisions of Article 342–705 prohibit a financial institution from disclosing the amount deposited or other records regarding the deposits, loans, accounts, or other transactions of a depositor, customer, borrower, or owner unless specific requirements for such disclosure are met. *See* Tex.Rev.Civ.Stat.Ann. art. 342–705 (Vernon Supp.1990). This statute implies a right of confidentiality in ones' financial records held by a financial institution by protecting

---

1. Pasquel incorrectly alleged in her petition that a divorce was pending in the Mexican court. Actually, the final judgment granting the divorce and dissolving the community property regime was rendered approximately one year prior to the filing of this suit. Furthermore, the affidavits in the record indicate that the only procedure affecting the parties and awaiting adjudication is the Mexican court's division of the community property estate.

any disclosure of such records unless and until the party seeking the information complies with the procedural steps requiring that disclosure. As such, Pasquel bore the burden to establish that disclosure was required at law or equity and that she followed the proper procedure to obtain the desired information.

Except for the present discovery action, all suits, judgments, and procedures affecting the parties' marriage and community property took place in Mexico. The Letters Rogatory upon which Pasquel justified her original petition were returned, unhonored, to the Mexican court. Zurita's affidavit from a Mexican lawyer stated that the information was inadmissible in the Mexican court's division of the community property estate. Pasquel did not assert other reasons, legal or equitable, showing good cause to require the release of the confidential bank records. Furthermore, Pasquel did not prove that the Mexican courts cannot grant a similar discovery request. *See* Tex.R.Civ.P. 184a; Tex.R.Civ.Evid. 203. The Texas trial court had no justification upon which it could grant the discovery; thus, Pasquel failed her duty to prove the existence of good cause for the release of Zurita's financial records.

 Procedural and evidentiary issues aside, the goal of this suit was to obtain information regarding the ownership status of the property in the bank and investment accounts identified above for ultimate use in a legal proceeding in a Mexican court. This raises a choice of laws question. Traditionally, where choice of law questions deal with ownership of personal property, as between spouses, the Rule of Domicile applies. *King v. Bruce*, 145 Tex. 647, 201 S.W.2d 803, 809 (Tex.

1947); *cert. denied,* 332 U.S. 769, 68 S.Ct. 82, 92 L.Ed. 355 (1947); *Ossorio v. Leon,* 705 S.W.2d 219, 222 (Tex.App.—San Antonio 1985, no writ); *see also, Reeves v. Schulmeier,* 303 F.2d 802, 807 (5th Cir. 1962). It is well settled that evidences of debt and money are personal property, the situs of which is the owner's domicile. *Campbell v. Campbell,* 586 S.W.2d 162, 170 (Tex.Civ.App.—Fort Worth 1979, writ dism'd w.o.j.).

Furthermore, where there are conflict of law issues, the "most significant relationship" approach set forth in Sections 6[2] and 145 of the Restatement (Second) of Conflict of Laws is used. *Duncan v. Cessna Aircraft Co.,* 665 S.W.2d 414, 420–21 (Tex. 1984). The *Duncan* court abandoned the *lex loci* rules previously used in determining a choice of law issue saying:

[I]n all choice of law cases, except those contract cases in which the parties have agreed to a valid choice of law clause, the law of the state with the most significant relationship to the particular substantive issue will be applied to resolve that issue.

*Duncan,* 665 S.W.2d at 421; *Leon,* 705 S.W.2d at 223.

 In the present case, it is uncontroverted that both parties are citizens and domiciliaries of Mexico. Thus, the accounts are considered personal property under Mexican jurisdiction. Pasquel knew of the existence of the Texas accounts before the final decree of divorce was entered yet did not seek to discover their contents at that time. Whether Pasquel would use and enjoy these funds in Mexico or Texas is not clear. Assuming arguendo, that Pasquel would use and enjoy these funds in Mexico and that the assets in the accounts were community property, any division and apportionment would have to be done by

2. The basic choice of law principles are:

(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.

(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability, and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

Restatement (Second) of Conflict of Laws § 6 (1971).

the Mexican divorce court using Mexican law. This is so because it has jurisdiction over the community property regime as well as the parties.

Mexican law has the most significant relationship to the discovery of the assets in question because, should any of the assets be properly characterized as "community" property, the Mexican divorce court has jurisdiction to divide it. Accordingly, this Texas court considering this suit to discover the Texas-based assets of a Mexican national for use in a Mexican community property division proceeding is without jurisdiction over the res and personam jurisdiction over both parties. Points of error numbers one and six are overruled.

■ In a nonjury trial, where no findings of fact or conclusions of law are filed or requested, it is implied that the trial court made all the necessary findings to support its judgment. *Roberson v. Robinson*, 768 S.W.2d 280, 280–81 (1989); *Goodyear Tire and Rubber Co. v. Jefferson Constr. Co.*, 565 S.W.2d 916, 918 (Tex. 1978); *Buchanan v. Byrd*, 519 S.W.2d 841, 842 (Tex.1975). We hold that the trial court properly denied the bill of discovery suit. Accordingly, discussion of appellant's three remaining points of error is unnecessary.

The judgment of the trial court is AFFIRMED.

Concurring opinion by Justice SEERDEN.

SEERDEN, Justice, concurring.

I agree that the judgment of the trial court should be affirmed. I write separately, however, to question the majoritys' statements that the court did not have jurisdiction of this cause. I would base the decision on the fact that a bill of discovery is an equitable proceeding and when other avenues are available to obtain the requested information, as there are in this case, it is within the discretion of the trial court to take the action taken.