ESTATE OF VICTOR W. RICHMAN, DECEASED, MARYON W. RICHMAN AND JUDITH S. TIME, INDEPENDENT CO-EXECUTORS, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Richman v. Commissioner (Estate of Richman)
Docket No. 22935-91
United States Tax Court
T.C. Memo 1994-421; 1994 Tax Ct. Memo LEXIS 429; 68 T.C.M. (CCH) 527; August 23, 1994, Filed *429 Decision will be entered under Rule 155. For petitioner: Howard W. Key and Charles R. Billings. For respondent: Henry C. Griego. HAMBLEN
HAMBLEN
MEMORANDUM OPINION HAMBLEN, Chief Judge: Petitioner is the Estate of Victor W. Richman, who died on July 1, 1987. Respondent determined a deficiency in petitioner's Federal estate tax of $ 650,018.64. [1] Most of the deficiency is attributable to respondent's partial disallowance of the $ 1,685,592 marital deduction that petitioner claimed under section 2056. [2] For various reasons, respondent determined that petitioner is entitled to a marital deduction of only $ 28,862. *430 After concessions by the parties, the issue remaining for decision is whether decedent's interest in a trust -- the Massachusetts Financial High Income Trust, Series I (the MFS trust or the trust) -- is properly characterized as his one-half interest in community property which accordingly would be deemed to pass under the terms of his will, or whether his interest was held in a joint tenancy with his wife with right of survivorship so that it would be deemed to pass directly to his wife by operation of law. The parties agree that if we decide that decedent's MFS trust interest passes under the terms of his will, no portion of it qualifies for the marital deduction pursuant to section 2056. On the other hand, the parties agree that if we decide that decedent held his interest in the trust with his wife in a joint tenancy with right of survivorship, petitioner is entitled to a marital deduction for the value of decedent's one-half interest since it "passed" to decedent's surviving spouse within the meaning of section 2056(a) and (c)(5). [3]
*431 At the heart of this characterization issue lies the interpretation of State law and a choice of law dilemma. The parties disagree as to the interpretation of Texas law and as to which State's law should be applied to define the nature of decedent's interest in the MFS trust. Respondent contends that the State law of Texas, decedent's domicile, controls the issue and that under it, decedent's interest in the trust must be characterized as his one-half interest in community property. Petitioner, on the other hand, argues that Massachusetts law controls the characterization of decedent's trust interest and that it requires his interest to be treated as one held in a joint tenancy with right of survivorship. For the reasons set forth below, we agree with petitioner that decedent's interest in the MFS trust was held in a joint tenancy with his wife with right of survivorship and thus immediately "passed" to her at the moment of his death within the meaning of section 2056(a) and (c)(5), and petitioner is therefore entitled to a marital deduction for the value of decedent's interest in the MFS trust. This case was submitted without a trial pursuant to Rule 122. The stipulation of *432 facts and attached exhibits are incorporated herein by this reference. Decedent Victor W. Richman died on July 1, 1987, leaving a valid will dated May 9, 1984. Decedent was survived by his wife, Maryon W. Richman (Mrs. Richman); his two sons, Harvey and Marc Richman; and his daughter, Judith S. Time. Decedent and Mrs. Richman were married in 1935 and were continuously domiciled, as husband and wife, in Texas from 1941 until decedent's death. On the date the petition was filed, the legal residence of the executors, Mrs. Richman and Judith Time, was Dallas, Texas. Approximately 18 months prior to decedent's death, decedent and Mrs. Richman began contributing money to a Massachusetts business trust [4] organized under the name "Massachusetts Financial High Income Trust -- Series I". According to the prospectus, the trust is an "open-end, diversified management investment company" which was organized under Massachusetts law in 1977. The parties have stipulated that the MFS trust "is governed under the laws of Massachusetts and the Investment Company Act of 1940 and the Rules and Regulations thereunder, as amended from time to time." The Richmans' MFS account statements indicate *433 that they owned a total of 93,442.046 shares in the trust on the date of decedent's death. In making their contributions to the trust, decedent and Mrs. Richman used money that they owned jointly as community property under Texas law. They did not partition their community funds into separate funds prior to making their contributions to the trust. There is no dispute that Texas is a community property State. The MFS trust has a standard account application to be completed by individuals who want to open a shareholder account in the trust. The application form instructs applicants to indicate whether the account will be "individual" or "joint" and states that "Joint accounts will be registered as joint tenants *434 with rights of survivorship unless otherwise indicated." MFS account applicants are required to sign the application. Decedent and Mrs. Richman chose to open a joint account with mutual rights of survivorship when they contributed money to the MFS trust. A Declaration of Trust (the trust agreement) created the MFS trust on December 15, 1977. The trust agreement and the amendments thereto were in effect on the date of decedent's death. The preamble of the trust agreement states that it applies to "holders, from time to time, of the shares of beneficial interest issued hereunder and subject to the provisions hereof." Section 1.2(h) and (i) of the trust agreement defines "shareholder" as a "record owner of outstanding Shares", and "shares" as the "equal proportionate units of interest into which the beneficial interest in the Trust shall be divided from time to time". Thus, the provisions of the trust agreement apply to decedent and Mrs. Richman in their capacity as shareholders in the MFS trust. Articles II and III of the trust agreement define the duties and powers of the MFS trustees. Article VI, entitled "Shares of Beneficial Interest", delineates the rights and powers of the *435 MFS shareholders. Article XI, entitled "Miscellaneous", contains the following choice of law clause: Section 11.2. Governing Law. This Declaration is executed by the trustees and delivered in the Commonwealth of Massachusetts and with reference to the laws thereof, and the rights of all parties and the validity and construction of every provision thereof shall be subject to and construed according to the laws of said State. [Emphasis added.]
In her reply brief, respondent concedes petitioner's proposed finding that "Decedent and his spouse, as Shareholders, were parties to the Declaration of Trust [i.e., the trust agreement]." It was the general policy of the MFS trust to provide a prospectus to applicants interested in becoming MFS trust shareholders. The prospectus outlines the basic investment features of the trust and indicates to prospective shareholders that by purchasing a beneficial interest in the trust, they will become subject to the trust agreement. The prospectus also makes several references to Massachusetts law as controlling the MFS shareholders' rights and liabilities. For example, under the heading "Description of Shares, Voting Rights *436 and Liabilities", the prospectus states that "Under Massachusetts law, shareholders of such a trust may, under certain circumstances, be held personally liable as partners for its obligations." During 1986 and 1987, the MFS trust issued dividend statements (i.e., IRS Forms 1099-DIV) to the Richmans. The dividend statements indicate that the Richmans held their MFS shares in a joint tenancy account with mutual rights of survivorship by virtue of printed notations such as "Joint Tenants With Rights of Survivorship", "JTWROS", and "JT Ten", which appear on the statements next to decedent's and Mrs. Richman's names. In addition, the MFS trust periodically issued account confirmation statements to the Richmans. The notation "Joint Tenants with Rights of Survivorship" appears on each of the confirmation statements following decedent's and Mrs. Richman's names. After decedent's death, the MFS trust issued MFS share certificates to Mrs. Richman in her name only. It is well established that, in general, "State law creates legal interests and rights. The federal revenue acts designate what interests or rights, so created, shall be taxed." Morgan v. Commissioner, 309 U.S. 78, 80 (1940); *437 see Blair v. Commissioner, 300 U.S. 5 (1937). Petitioner argues that, due to the choice of law clause contained in the trust agreement, we are required to apply Massachusetts law, which recognizes the validity of the Richmans' agreement to hold their MFS shares as joint tenants with mutual rights of survivorship. Respondent, on the other hand, argues that we are required to apply the law of decedent's domicile, Texas, to questions involving the transfer of his personal property, and that under Texas law, the Richmans' agreement to hold their shares as joint tenants with survivorship rights was wholly inoperative. Because the Richmans contributed funds held as community property to the MFS trust, respondent contends that the shares they received in exchange constituted community property despite their designation to the contrary on the MFS account application. Respondent further argues that upon decedent's death, one-half of the Richmans' community property interest in the trust became decedent's separate property which must be distributed according to his will. Before addressing the parties' choice of law arguments, we must first determine whether *438 there is a material difference between the laws of Texas and Massachusetts regarding the nature of decedent's interest in the MFS trust, as well as its proper disposition upon his death. We observe that during the year of decedent's death, Texas law regarding the creation by spouses of a joint tenancy estate with survivorship rights was in a state of flux. In the landmark case of Hilley v. Hilley, 342 S.W.2d 565 (Tex. 1961), the Texas Supreme Court held that it was unconstitutional for a husband and wife to hold community property with right of survivorship. Id. at 568 (Court held that corporate stock purchased with community funds and issued in names of husband and wife as joint tenants was community property, and did not become wife's separate property upon husband's death absent a prior partition of the property meeting statutory requirements.); Allard v. Frech, 754 S.W.2d 111, 115 (Tex. 1988); Maples v. Nimitz, 615 S.W.2d 690, 695 (Tex. 1981). In Hilley the court reasoned that the attempted creation of survivorship rights in community property was *439 inconsistent with the community property principle that each spouse is free to dispose of his or her interest in the community when one spouse dies. Hilley v. Hilley, supra at 568-569. "Furthermore, it was considered fundamental that each spouse have testamentary power over his or her one-half interest in the community estate." Featherston & Springer, "Marital Property Law in Texas: The Past, Present and Future", 39 Baylor L. Rev. 861, 895 (1987). As a result of this decision, a married couple who wanted to create survivorship rights with respect to their community property in Texas had to first partition the jointly held item into separate property interests, and then execute a survivorship agreement pursuant to section 46 of the Texas Probate Code as it then existed. See Allard v. Frech, supra at 115; Maples v. Nimitz, supra at 695; Williams v. McKnight, 402 S.W.2d 505, 507 (Tex. 1966). Petitioner colloquially refers to this partition prerequisite as the "Texas Two-Step". In June 1987, however, the Texas Legislature *440 amended section 46 of the Texas Probate Code to provide that spouses could agree in writing that "all or part of their community property * * * becomes the property of the surviving spouse on the death of a spouse." Act of June 18, 1987, ch. 678, secs. 2(b) and 3, 1987 Tex. Sess. Law Serv. 5068-5069 (Vernon). On November 3, 1987, approximately 4 months after decedent's death, an amendment to article XVI, section 15 of the Texas Constitution was passed, effectuating the amendment to the Probate Code, and specifically authorizing spouses to agree "that all or part of their community property becomes the property of the surviving spouse on the death of a spouse." Tex. Const. art. XVI, sec. 15 (amended 1987). If this constitutional amendment, abolishing the partition requirement, applies retroactively to decedent's interest in the MFS trust shares, the Richmans' survivorship agreement is valid under Texas law. In 1989, two years after the enactment of the 1987 constitutional amendment, legislation was passed providing that the 1987 constitutional amendment applies retroactively to preexisting agreements that create survivorship rights in community property, but only if both spouses *441 were still living in November 1987 when the constitutional amendment was passed. Act of June 14, 1989, ch. 655, sec. 3, 1989 Tex. Sess. Law Serv. 2163 (Vernon). Because decedent died 4 months before the constitutional amendment was passed, this statute appears to preclude the retroactive application of the constitutional amendment. However, the one Texas case brought to our attention that addresses this limitation on the retroactive application of the amendment suggests that the limitation on retroactivity might not be valid. Haynes v. Stripling, 812 S.W.2d 397, 400 (Tex. Ct. App. 1991). Moreover, that case states that the "public policy of the State regarding the retroactive application of the 1987 amendment * * * 'is so clearly and broadly stated as to be unmistakable.'" Id. at 400 (quoting Beck v. Beck, 814 S.W.2d 745, 750 (Tex. 1991) (Cook, J., concurring)). Although the facts of Haynes v. Stripling, supra, are not directly analogous to those in the present case, the broad reasoning in that case suggests that a Texas court, addressing the present *442 situation in which the decedent died after the Texas legislature passed legislation eliminating the partition requirement but a few months before the constitutional amendment was ratified, might uphold the validity of the survivorship agreement. See also Beck v. Beck, supra.
We observe, and respondent concedes, that in Massachusetts there is no so-called "Texas Two-Step" requirement. Under Massachusetts law, spouses may freely enter into agreements to hold their property as joint tenants with mutual survivorship rights without first partitioning their property. See Flaugh v. Pratt, 294 N.E.2d 478, 479 (Mass. App. Ct. 1973). Thus, if Massachusetts law applies, decedent's undivided one-half interest in the MFS shares passed to the surviving joint tenant, Mrs. Richman, without regard to the terms of decedent's will. As the foregoing indicates, the laws of Texas and Massachusetts law do not necessarily reach opposite conclusions regarding the validity of the Richmans' survivorship agreement. Given the broad reasoning of Haynes v. Stripling, supra, a court applying Texas law might *443 uphold the survivorship provision, as would a court applying Massachusetts law. Even if Texas law were interpreted to invalidate the survivorship agreement, however, we believe that the survivorship agreement is valid because a conflict of law analysis requires the application of Massachusetts law. In making the decision regarding which State's law controls, we look to Texas choice of law principles. See Day & Zimmermann, Inc. v. Challoner, 423 U.S. 3, 4 (1975); Stuart v. Spademan, 772 F.2d 1185, 1195 (5th Cir. 1985). Petitioner argues that in Duncan v. Cessna Aircraft Co., 665 S.W.2d 414, 421 (Tex. 1984), the Texas Supreme Court adopted the "most-significant-relationship" test, as set forth in the Restatement (Second) of Conflict of Laws (1971) (sometimes referred to as the Restatement), to resolve conflicts of law questions, thus abandoning the traditional lex loci contractus rule (i.e., apply the law of the place where the contract was made). We agree with petitioner. In Duncan, the court had to decide whether the substantive law of Texas or of New Mexico controlled the construction *444 of a release-of-liability clause in a contract executed by one of the parties in favor of the owner of a Cessna airplane that had crashed. In making this decision, the Texas Supreme Court stated that in all choice of law cases, except those contract cases in which the parties have agreed to a valid choice of law clause, the law of the state with the most significant relationship to the particular substantive issue will be applied to resolve that issue. [Id. at 421; emphasis added.]
Finding that the parties had not made a choice of law agreement for purposes of construing the release clause, in Duncan the court held that Texas contract law controlled because Texas had a more significant interest than New Mexico in the effect given to the release clause. One year after Duncan was decided, the Texas Court of Appeals, in Ossorio v. Leon, 705 S.W.2d 219, 223 (Tex. Ct. App. 1985), followed the Texas Supreme Court's holding in Duncan, confirming that, in the absence of a choice of law by the parties, a Texas court is to apply the "most-significant-relationship" test as set forth in the relevant sections *445 of the Restatement. [5]
*446 Respondent relies on three cases to support her assertion that "when choice of law questions deal with ownership of personal property, as between spouses," Texas courts will apply the law of the spouses' domicile rather than the weighing the relevant factors enumerated in sections 188 and 6 of the Restatement. The three cases cited by respondent for this proposition are: King v. Bruce, 201 S.W.2d 803, 809 (Tex. 1947); Ramirez v. Lagunes, 794 S.W.2d 501, 506 (Tex. Ct. App. 1990); and Ossorio v. Leon, supra at 222-223. For several reasons, we find that respondent's reliance on these cases is misplaced. First, respondent's argument obfuscates the approach Texas courts have taken in resolving conflict of laws questions by implying that in each of the three above-cited cases, the underlying issue involved merely the ownership of personal property. According to respondent, if the issue involves simply the ownership of personal property, the substantive law of the property owner's domicile must be followed. However, if the underlying issue involves the construction of contractual rights, *447 respondent concedes that Texas courts will apply the law designated by the parties in a valid choice of law clause, and if none, the courts will apply the most-significant-relationship test as set forth in the Restatement (Second) of Conflict of Laws (1971). Contrary to respondent's analysis, we find that the substantive issue in each of the three cases cited by respondent -- King, Ramirez, and Ossorio -- was one involving contractual rights, not simply the ownership of personal property. At the time King v. Bruce, supra, was decided in 1947, Texas courts, in resolving choice of law questions involving contracts, generally followed the law of the State where the contract was made, or lex loci contractus. The court in King merely established an exception to the former lex loci contractus rule by holding that, with respect to spouses contracting outside of Texas to hold their community property as joint tenants with right of survivorship, the law of the spouses' domicile should be applied. King v. Bruce, supra at 809. This exception, however, no longer exists since the lex loci contractus method *448 for resolving conflicts of law questions has been superseded in Texas by the principles set forth in sections 188 and 6 of the Restatement. Duncan v. Cessna Aircraft Co., 665 S.W.2d 414, 421 (Tex. 1984). Thus, King is not authority for respondent's position that the substantive law of decedent's domicile must be applied in characterizing decedent's interest in the MFS trust. The second case cited by respondent, Ramirez v. Lagunes, supra, also fails to support her argument. The underlying issue in Ramirez was whether information regarding a husband's investment accounts in Texas was subject to discovery by his wife for use in a divorce and property settlement proceeding in a Mexican court. Both spouses were domiciled in Mexico. The Texas Court of Appeals recognized that "Traditionally, where choice of law questions deal with ownership of personal property, as between spouses, the Rule of Domicile applies". However, after making that statement, the court then quoted the Texas Supreme Court's holding in Duncan and applied the Restatement's most-significant-relationship test by comparing the interests *449 each jurisdiction had with the underlying issue. Ramirez v. Lagunes, supra at 506-507 ("Mexican law has the most significant relationship to the discovery of the assets in question because, should any of the assets be properly characterized as 'community' property, the Mexican divorce court has jurisdiction to divide it."). Although the Ramirez decision is somewhat vague, it does not support respondent's argument that the law of decedent's domicile necessarily controls the character of his interest in the MFS trust. The facts in the third case cited by respondent, Ossorio v. Leon, 705 S.W.2d 219 (Tex. Ct. App. 1985), are similar in some respects to those in petitioner's case. However, the court of appeals' approach in Ossorio to resolving the conflict of laws issue is directly contrary to respondent's argument that the law of decedent's domicile must be followed. In Ossorio, a married couple domiciled in the Federal District of Mexico deposited funds in a Texas bank. The account documents provided that all deposits would be owned by the depositors as joint tenants with right of survivorship. After *450 the husband died, the wife's attempt to withdraw the funds was challenged by the deceased husband's children of prior marriages, who contended that they were entitled to a portion of the bank funds under the descent and distribution laws of the State of Texas. In determining who owned the bank funds, the Court in Ossorio had to first decide whether the substantive law of Texas or Mexico was controlling. The Ossorios' survivorship agreement was valid under Mexican law; under the law of Texas, it was invalid since the Ossorios had not partitioned their funds prior to making the deposits. Finding that the parties had not agreed on a choice of law to govern issues pertaining to the Ossorios' bank account, the court in Ossorio looked to see which jurisdiction, Texas or Mexico, had the most significant relationship to the issue of the ownership of the bank account. The court weighed several factors, including the fact that the Ossorios had been domiciled in Mexico for many years and that their justified expectations would be protected if the substantive law of Mexico was applied. The Court in Ossorio concluded that Mexican law governed the issue of the ownership of the *451 bank account and that, consequently, Mrs. Ossorio was entitled to the bank funds since she was the surviving joint tenant. Ossorio v. Leon, supra at 222. Contrary to respondent's assertion that the Ossorios' domicile was dispositive in the court's holding that the substantive law of Mexico applied, we find that their domicile was merely one of several factors that the court weighed in applying the most-significant-relationship test as set forth in the Restatement. The court's opinion in Ossorio also reaffirms that Texas courts, in resolving conflict of laws issues involving contracts, will apply section 188 of the Restatement as a two-prong test. With respect to the first prong, a Texas court will determine whether the parties agreed to a valid choice of law clause. Only if the parties did not so agree will the court apply the most-significant-relationship test by comparing the contacts each jurisdiction has with respect to the parties and their transaction. Id. at 223; 1 Restatement, Conflict of Laws 2d, sec. 188 (1971). Petitioner's case is factually distinguishable from Duncan v. Cessna Aircraft Co., supra, *452 as well as the three cases upon which respondent has attempted to rely -- King v. Bruce, 201 S.W.2d 803 (Tex. 1947); Ramirez v. Lagunes, 794 S.W.2d 501 (Tex. Ct. App. 1990); and Ossorio v. Leon, supra. The courts in those cases found that the parties therein had not made agreements to govern the contracts in question. In petitioner's case, however, the choice of law clause contained in the MFS trust agreement applies to the Richmans by its terms. The clause states that "the rights of all parties and the validity and construction of every provision hereof shall be subject to and construed according to the laws of" the Commonwealth of Massachusetts. (Emphasis added.) Respondent concedes that "Decedent and his spouse, as Shareholders, were parties to the Declaration of Trust." (Emphasis added.) Respondent also concedes that the Richmans "entered into a contractual agreement to purchase shares of the MFS Trust and thereby consented to the conditions set forth in the Declaration of Trust [the trust agreement]". Despite these concessions, respondent argues that the choice of law *453 clause applies only to the MFS trustees, and not to the Richmans' agreement to hold their shares as joint tenants with right of survivorship, as designated on their MFS account application. We disagree. The MFS account application was the only document that the Richmans had to execute to purchase shares in the MFS trust, and the trust agreement is the only document that delineates their rights and powers as MFS shareholders. Thus, we view the account application and the trust agreement as one contract. Furthermore, if the choice of law clause had been intended to apply only to the MFS trustees, the clause would logically have been included in Article II or Article III, pertaining to the duties and powers of the trustees. Instead, the choice of law clause is part of Article XI, which includes miscellaneous provisions applicable to both the trustees and the shareholders. Accordingly, we conclude that the choice of law clause applies to the Richmans' agreement to hold their shares as joint tenants with right of survivorship as designated on their account application. Without regard to the express language of the choice of law clause, we further conclude that it is implicit -- *454 from all the references to Massachusetts law in the trust agreement, the account application, the prospectus, and the other MFS documents that were submitted -- that the Richmans and the MFS trustees effectively chose Massachusetts law to govern their contract, including the provision that the Richmans would hold their shares as joint tenants with right of survivorship. See 1 Restatement, Conflict of Laws 2d, sec. 187, comment a (1971). [6]
*455 Respondent argues that even if the Richmans and the trustees effectively chose Massachusetts law to govern their contract, including the validity of the survivorship feature of the Richmans' joint account, their choice of law is nonetheless inoperative under Texas choice of law principles. Again, we disagree with respondent. In general, contractual choice of law agreements will be upheld in Texas if the law chosen by the parties has a reasonable relationship with the parties or their agreement, and the law of the chosen State is not contrary to a fundamental policy of the State, the law of which would otherwise apply. DeSantis v. Wackenhut Corp., 793 S.W.2d 670, 677 (Tex. 1990). In DeSantis, the Texas Supreme Court expressly adopted section 187 of the Restatement for purposes of determining when contractual choice of law provisions will be given effect. Section 187 of the Restatement states as follows: § 187. Law of the State Chosen by the Parties (1) The law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit *456 provision in their agreement directed to that issue. (2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.
(3) In the absence of a contrary indication of intention, the reference is to the local law of the state of the chosen law. [1 Restatement, Conflict of Laws 2d, sec. 187 (1971).]
The issue before us -- the enforceability of the Richmans' agreement to hold their MFS shares in a joint tenancy with right of survivorship -- is not "one which the parties could *457 have resolved by an explicit provision in their agreement". See id.sec. 187(2) comment d. [7] We therefore apply section 187(2) of the Restatement. *458 In this case, the Richmans agreed that Massachusetts law would govern the trust agreement and their purchase of the MFS shares. Respondent argues that, in light of the two exceptions set forth in paragraphs (a) and (b) of section 187(2) of the Restatement, the choice of law clause should not be respected because: (1) Massachusetts does not have a sufficient relationship to the Richmans or their transaction, or alternatively, (2) the application of Massachusetts law would offend a fundamental policy of Texas which formerly did not recognize the creation of survivorship rights in community property. Contrary to respondent's assertions, we find that Massachusetts has a substantial relationship to the Richmans' agreement to purchase and hold their shares as joint tenants with right of survivorship. The MFS trust agreement was recorded with the secretary of state for the Commonwealth of Massachusetts. According to the prospectus and the trust agreement, the MFS trustees, as well as the trust's investment adviser and principal underwriter, maintain their offices and conduct business in Massachusetts. MFS share certificates and account statements were sent to the Richmans from Massachusetts. *459 The account application executed by the Richmans, which brought them within the terms of the trust agreement, was sent to Massachusetts. Likewise, the money that the Richmans invested in the trust was sent to Massachusetts. These contacts are more than sufficient to establish that Massachusetts has a substantial relationship to the Richmans and their transaction for purposes of section 187(2)(a) of the Restatement. See DeSantis v. Wackenhut Corp., supra at 678; Stuart v. Spademan, 772 F.2d 1185, 1195 (5th Cir. 1985) ("Finding a reasonable relationship between the parties and the transaction and the state whose law has been chosen to govern a contract involves a far less rigorous standard than does the due-process inquiry for purposes of asserting personal jurisdiction over a nonresident."); Woods-Tucker Leasing Corp. v. Hutcheson-Ingram Development Co., 642 F.2d 744 (5th Cir. 1981). Accordingly, this first exception to the effectiveness of the choice of law clause does not apply. Thus, pursuant to section 187(2) of the Restatement, the Richmans' choice of Massachusetts law will be *460 respected unless the second exception, provided by paragraph (b) of section 187(2), applies. This second exception applies only if its three conjunctive prerequisites are met: First, Texas must have a "materially greater interest" than Massachusetts in deciding the enforceability of the Richmans' agreement to hold their shares as joint tenants with right of survivorship; second, Texas must have a more "significant relationship" than Massachusetts to the Richmans and their transaction under the principles of section 188; and third, the application of the law of the chosen State -- Massachusetts -- would be "contrary to a fundamental policy" of Texas. 1 Restatement, Conflict of Laws 2d, sec. 187(2)(b) & comment g (1971); see also DeSantis v. Wackenhut Corp., supra at 678. The exception provided by paragraph (b) does not apply because, regardless of whether its first two prerequisites are met, we are not convinced that giving effect to the Richmans' choice of Massachusetts law would contravene a fundamental policy of Texas. We note that neither the Restatement nor the cases that have followed section 187 have established a general definition of *461 "fundamental policy". However, the Texas Supreme Court, in applying section 187(2)(b) of the Restatement, has stated that "the fact that the law of another state is materially different from the law of this state does not itself establish that application of the other state's law would offend the fundamental policy of Texas." DeSantis v. Wackenhut Corp., 793 S.W.2d at 680. We observe that one of the primary reasons the Texas Legislature amended Article XVI, section 15 of the Texas Constitution, thereby eliminating the two-step partition requirement, was because the partition formality often foiled married couples' contractual attempts to create survivorship rights in their community property. The House Committee Resolution Analysis of Senate Joint Resolution 35, 70th Legislature, Regular Session, 1987, contained in the Texas Legislative Reference Library, explains the policy underlying the 1987 constitutional amendment as follows: Background Information
From 1840 to 1965, married couples could own community property with the right of survivorship in the state of Texas. However, since 1965, Texas courts have persistently denied married *462 couples an easy means of holding their property with right of survivorship. Although it has long been relatively easy to create a right of survivorship in separate property, many banks and savings and loans associations have often failed to provide forms by which their customers can create effective joint tenancies out of community property. Many Texas spouses hold a substantial amount of their assets in a form that is ineffective to achieve their desired purpose. Each of these accounts or transactions represents a potential lawsuit that may result in frustrating the intent of the spouses. A simple means should be made available by which both spouses by a written instrument can provide that the survivor of them may be entitled to all or any designated portion of their community property without the necessity of making a will for that purpose.
Purpose
This proposed constitutional amendment will allow the people to provide that a Texas couple may hold community property with a right of survivorship in the surviving spouse. * * * [Emphasis added.]
Thus, we find that the Texas Legislature, in amending the constitution so as to eliminate the partition requirement, *463 intended to carry out the public policy of preserving the sanctity of spouses' rights to form contracts with respect to their community property. According to legal commentators, the public policy behind the formerTexas law, which nullified spouses' attempts to impose survivorship rights in their community property absent the formal partition procedure, is rooted in a paternalistic view of women and their rights to property. See Featherston & Springer, "Marital Property Law in Texas: The Past, Present and Future", 39 Baylor L. Rev. 861, 867 (1987). Authors Featherston and Springer state that as Texas entered the twentieth century, "women began exercising their political power and demanding equal treatment in the management of their own properties." Id. at 867. In response to these changes in public policy, the Texas Legislature began enacting property reforms. The changes in public policy ultimately led to passage of the amendment to the Texas Constitution on November 3, 1987, eliminating the need for spouses to partition their community property prior to creating a joint tenancy estate with survivorship rights in *464 the property. Tex. Const. Art. XVI, sec. 15 (amended 1987). We note that prior to decedent's death, the Texas Legislature passed the constitutional amendment by a large majority, and also amended section 46 of the Texas Probate Code to provide that spouses could agree in writing that "all or part of their community property * * * becomes the property of the surviving spouse on the death of a spouse." Act of June 18, 1987, ch. 678, sec. 2(b) and 3, 1987 Tex. Sess. Law Serv. 5068 (Vernon). The constitutional amendment, effectuating the amendment to the Texas Probate Code, passed easily by a vote of the Texas electorate and facilitated the common desire of many married couples to have their community property pass to the surviving spouse without the burden of probate. Featherston & Springer, supra at 895. In light of the above, we find that the application of Massachusetts law to the Richmans' survivorship agreement would not contravene any "fundamental policy" of Texas as it had evolved up to the date of decedent's death. See 1 Restatement, Conflict of Laws 2d, sec. 187(2)(b) (1971). To the contrary, we find it is more likely that the application of Massachusetts law *465 to the Richmans' survivorship agreement would reflect the Texas general public's thinking with respect to marital property rights. The amendments to the Texas Constitution and the Probate Code were passed precisely because the Texas Supreme Court's decision in Hilley v. Hilley, 342 S.W.2d 565 (Tex. 1961), no longer reflected the public policy in Texas. See id. (court held that corporate stock purchased with community funds, did not become wife's separate property upon husband's death absent a prior partition of the property.); Featherston & Springer, supra at 895. Therefore, because the exception provided by section 187(2)(b) of the Restatement does not apply, the choice of law clause in the MFS trust agreement is to be respected under Texas choice of law principles. Accordingly, we hold that the Richmans' agreement to hold their MFS trust shares as joint tenants with right of survivorship is valid and enforceable. [8]
*466 We further hold that because decedent is deemed to have held his trust interest in a joint tenancy with Mrs. Richman with right of survivorship, petitioner is entitled to a marital deduction for the value of decedent's one-half interest since it "passed" to Mrs. Richman -- the surviving spouse -- within the meaning of section 2056(a) and (c)(5). We have considered respondent's other arguments and find them wholly unpersuasive and without merit. To reflect the foregoing, Decision will be entered under Rule 155. Footnotes
1. This amount reflects respondent's concession that computational errors were made in the deficiency notice. Originally, respondent determined that petitioner's estate tax deficiency was $ 845,009.66.↩
2. Unless otherwise indicated, section references are to the Internal Revenue Code in effect on the date of decedent's death, and Rule references are to the Tax Court Rules of Practice and Procedure.↩
3. Sec. 2056 provides in pertinent part as follows: SEC. 2056. BEQUESTS, ETC., TO SURVIVING SPOUSE. (a) Allowance of Marital Deduction. -- For purposes of the tax imposed by section 2001, the value of the taxable estate shall, except as limited by subsection (b), be determined by deducting from the value of the gross estate an amount equal to the value of any interest in property which passes or has passed from the decedent to his surviving spouse, but only to the extent that such interest is included in determining the value of the gross estate. * * * (c) Definition. -- For purposes of this section, an interest in property shall be considered as passing from the decedent to any person if and only if -- * * * (5) such interest was, at the time of the decedent's death, held by such person and the decedent * * * in joint ownership with right of survivorship↩; [Emphasis added.]
4. A "Massachusetts trust" is generally defined as an unincorporated business association, organized under Massachusetts law, wherein property is conveyed to trustees and managed for the benefit of holders of certificates similar to corporate stock certificates. Black's Law Dictionary 974 (6th ed. 1990).↩
5. The most-significant-relationship test with respect to an issue in contract is found in section 188 of the Restatement (Second) of Conflict of Laws, which states in pertinent part as follows: § 188. Law Governing in Absence of Effective Choice by the Parties (1) The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in § 6. (2) In the absence of an effective choice of law by the parties (see § 187), the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include: (a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicil, residence, nationality, place of incorporation and place of business of the parties.
These contacts are to be evaluated according to their relative importance with respect to the particular issue. [1 Restatement, Conflict of Laws 2d, sec. 188 (1971.)]
Section 6 of the Restatement (Second) of Conflict of Laws states as follows: § 6. Choice-of-Law Principles (1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law. (2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include (a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability, and uniformity of result, and (g) ease in the determination and application of the law to be applied. [Id.sec. 6↩.]
6. Sec. 187 of the Restatement (Second) of Conflict of Laws addresses the question of when choice of law agreements should be given effect. Comment a discusses the scope of sec. 187, and states in pertinent part as follows: a. Scope of section. The rule of this Section is applicable only in situations where it is established to the satisfaction of the forum that the parties have chosen the state of the applicable law. When the parties have made such a choice, they will usually refer expressly to the state of the chosen law in their contract, * * *. But even when the contract does not refer to any state, the forum may nevertheless be able to conclude from its provisions that the parties did wish to have the law of a particular state applied. So the fact that the contract contains legal expressions, or makes reference to legal doctrines, that are peculiar to the local law of a particular state may provide persuasive evidence that the parties wished to have this law applied. [1 Restatement, Conflict of Laws 2d, sec. 187, comment a↩ (1971); emphasis added.]
7. Comment d explains which issues are to be classified under sec. 187(2) of the Restatement as those "which the parties could not have resolved by an explicit provision in their agreement". Comment d states in pertinent part as follows: d. Issues the parties could not have determined by explicit agreement directed to particular issue. The rule of this Subsection applies only when two or more states have an interest in the determination of the particular issue. * * * Subject to this qualification, the rule of this Subsection applies when it is sought to have the chosen law determine issues which the parties could not have determined by explicit agreement directed to the particular issue. Examples of such questions are those involving capacity, formalities and substantial validity. A person cannot vest himself with contractual capacity by stating in the contract that he has such capacity. He cannot dispense with formal requirements, such as that of a writing, by agreeing with the other party that the contract shall be binding without them. Nor can he by a similar device avoid issue of substantial validity, such as whether the contract is illegal. Usually, however, the local law of the state chosen by the parties will be applied to regulate matters of this sort. And it will usually be applied even when to do so would require disregard of some local provision of the state which would otherwise be the state of the applicable law. [1 Restatement, Conflict of Laws 2d, sec. 187(2), comment d↩ (1971).]
8. Due to the effectiveness of the choice of law clause in petitioner's case, we need not apply the most "significant relationship test" as set forth in sec. 188 of the Restatement. Duncan v. Cessna Aircraft Co., 665 S.W.2d 414, 421↩ (Tex. 1984).